**SECO, INC., Plaintiff and Respondent,**

**v.**

**GAUVEY RIG & TRUCKING COMPANY, Inc., Defendant and Appellant.**

**THOMAS AUTO SUPPLY, INC., Plaintiff and Respondent,**

**v.**

**GAUVEY RIG & TRUCKING COMPANY, Inc., Defendant and Appellant.**

**Civ. Nos. 8503, 8504.**

Supreme Court of North Dakota.

Feb. 25, 1969.

Walter O. Burk, Williston, for defendant and appellant.

Bjella, Jestrab, Neff & Pippin, Williston, for plaintiff and respondent.

PAULSON, Judge.

This appeal and demand for a trial de novo comes to this court from a judgment

secured by the two corporate plaintiffs, after a trial before the district court sitting without a jury. Since the issues in both complaints were identical, the cases were consolidated for trial and, by stipulation, were consolidated for this appeal.

J. C. Gauvey and Mae Gauvey, officers and sole stockholders of Gauvey Rig & Trucking Co., Inc., in September of 1964, sold virtually all of the physical assets of the corporation at a public auction except for:

1. Oil field bed with rolling tail board and fifth wheel-Montgomery Bed Gin poles, with line and chains;

2. Two bolsters for pole trailers;

3. One rolling tail board;

4. Two single axle pole trailers—model Nabors; and

5. Spencer Load Craft Tandem floats.

A 1959 Chevrolet truck was also sold at the auction sale, but was repurchased from the buyer apparently by Gauvey Rig & Trucking. Four transportation permits were retained by the corporation.

On November 5, 1964, J. C. Gauvey and Mae Gauvey entered into a conditional sales contract for the sale of Gauvey Rig & Trucking, Inc. to Saxe, Inc., of Williston. Saxe, Inc., was in the general contracting and paving business. Gauvey Rig & Trucking Co., Inc., primarily operated a business of oil field rig hauling. The agreement provided for the purchase by Saxe of the 500 shares of capital stock of Gauvey Rig & Trucking. The physical assets, including the 1959 Chevrolet truck and the transportation permits, were included in the agreement. The purchase price was $27,000, $4,000 being payable on or before November 20, 1964, and the balance to be paid at $500 per month, commencing April 1, 1965. Title was to remain in the seller until the payment of the entire purchase price. The agreement further provided that Saxe, the purchaser, was entitled to all stock dividends and that

J. C. Gauvey and Mae Gauvey resign as directors. The stock was placed in escrow to be delivered when payment had been made in full. The new board of directors and the new managing officers of the Gauvey Rig & Trucking Co., Inc., were substantially the same individuals who were serving as members of the board of directors and as officers of Saxe, Inc.

While Saxe owned Gauvey Rig & Trucking, the plaintiffs, Seco, Inc., and Thomas Auto Supply, Inc., sold and delivered merchandise and equipment to Gauvey Rig & Trucking, based upon the latter's requests. Seco asserts sale and delivery of merchandise and equipment during the period commencing November 18, 1964, and terminating April 19, 1965; Thomas Auto Supply claims sale and delivery of merchandise and equipment during the period commencing December 4, 1964, and ending April 12, 1965. The cost of the merchandise and equipment has not been paid and is the basis for these actions.

Saxe defaulted in the terms and conditions of this conditional sales agreement, which default included the failure to pay the initial $4,000 down payment.

The Gauveys then commenced legal proceedings against Saxe, Inc.

At a conference between the Gauveys and Saxe, the latter represented by its president, John S. Froshaug, an assignment of the capital stock and a separate release were drafted and executed on August 19 and 20, 1965, respectively. Pursuant to these agreements, the original sales contract was canceled and the 500 shares of capital stock were reassigned to the Gauveys. The physical assets of the company had been mortgaged to the First National Bank of Williston for $4,000, of which a balance of $2,152.79 remained unpaid. In consideration of the Gauveys' discharging this remaining balance, Saxe executed and delivered to the Gauveys "a Bill of Sale, the Bill of Sale to be in the form of a Chattel Mortgage" for the equipment named in the original agreement. Saxe,

during its period of ownership, had collected most of the accounts receivable due Gauvey Rig & Trucking. The total amount of such accounts receivable was not stated in the record, nor is there any indication in the record of how and when they were acquired. The remaining accounts receivable, totaling $1,479.52, were assigned to J. C. Gauvey for collection. J. C. Gauvey was unable to collect the entire amount of these accounts for reasons not here pertinent. The testimony indicates that the moneys realized from the accounts were to be used to pay taxes and workmen's compensation premiums owed by Gauvey Rig & Trucking during Saxe's ownership. Saxe was further given a 6-month option to redeem the original contract. Gauvey Rig & Trucking also executed and delivered to Mr. and Mrs. Gauvey, as individuals, a 2-year promissory note for $3,020.43, for the balance. The record is silent as to the reason for the execution of this note. The settlement agreement provided for the dismissal with prejudice of any and all actions brought by the Gauveys against Saxe. There was no provision in the assignment and release comparable to the provision incorporated in the conditional sales agreement whereby all indebtedness of Gauvey Rig & Trucking would be assumed and extinguished by the original conditional seller.

Saxe, Inc., entered bankruptcy. The evidence in the record discloses only that the bankruptcy occurred after the execution of the conditional sales agreement and before the trial of these actions.

Prior to considering the issues presented in this case it should be noted that the Uniform Commercial Code has no application, since these causes of action arose before July 1, 1966, the effective date of the Uniform Commercial Code. § 41–01–10, North Dakota Century Code. The findings of fact indicate that, during the periods in question, Thomas Auto Supply, Inc., and Seco, Inc., at the request of Gauvey Rig & Trucking Co., Inc., delivered to the latter certain merchandise, the value of which was determined from the purchase orders, invoices, and ledger sheets which are exhibits in this case, and that such sums have not been paid by Gauvey despite the timely demands of Thomas Auto Supply, Inc., and Seco, Inc.

We agree with the appellant, Gauvey Rig & Trucking, that the assignment to the Gauveys is not governed by the North Dakota Bulk Sales Law, which was effective in this State prior to the adoption of the Uniform Commercial Code. § 51–02–02, N.D.C.C., provides that:

"The sale[,] transfer, or assignment, in bulk, or any part or the whole of a stock of merchandise, or merchandise and fixtures pertaining to the conduct of a business, otherwise than in the ordinary course of trade and in the regular prosecution of the business of the seller, transferor, or assignor, shall be void as against the creditors of the seller, unless: * * *."

In interpreting this provision of the Bulk Sales Law, this court said, in Johnson v. Kelly, 32 N.D. 116, 155 N.W. 683 (1915), at paragraph 3 of the syllabus:

"The sales in bulk statutes apply only to stocks of merchandise and fixtures, or goods a part of a merchandise stock which are kept for sale as such."

The record shows that neither Saxe nor Gauvey Rig & Trucking were engaged in retail trade, but rather were engaged in construction and hauling. The assignment of the assets of Gauvey Rig & Trucking, including the intangible assets represented by the transportation permits, would not be within the Bulk Sales Law. Continental Casualty Co. v. Burlington Truck Lines, 70 Ill.App.2d 405, 217 N.E.2d 293 (1966); 168 A.L.R. 735; 168 A.L.R. 762; 6A Corbin, Contracts § 1514, p. 726.

We thus reach the question of Gauvey Rig & Trucking's present liability for merchandise and equipment purportedly ordered and delivered to the corporation, while this corporation was owned by Saxe,

Inc. The only witnesses at the trial were Clarence E. Wehrman, president and manager of Thomas Auto Supply, Inc.; Donald O. Stockman, president and manager of Seco, Inc., and J. C. Gauvey, former president of Gauvey Rig & Trucking prior to the transfer of its assets to Saxe. The financial records of Gauvey Rig & Trucking pertaining to the period of its operation by Saxe were not produced at the trial; nor were there any witnesses present who testified concerning Saxe's operation of Gauvey Rig & Trucking under the management of Mr. Froshaug. The evidence upon which the trial court based its decision consisted of the conditional sales contract, the stock assignment and release agreement, plus the purchase orders, invoices, and ledger sheets of the Seco and Thomas Auto Supply corporations. The purchase orders, invoices, and ledger sheets indicated the merchandise and equipment and the value thereof which were allegedly ordered and received by Gauvey Rig & Trucking. Gauvey Rig & Trucking objected to the admission of the purchase orders, invoices, and ledger sheets because they did not reveal that the materials listed thereon were in fact delivered to Gauvey Rig & Trucking.

There is one determinative issue in the instant case: Do the purchase orders, invoices, and ledger sheets, admitted into evidence pursuant to Section 31–08–01 et seq., N.D.C.C., the Uniform Business Records as Evidence Act, establish proof of a prima facie case so as to prove the indebtedness owed Seco and Thomas Auto Supply by Gauvey Rig & Trucking?

 This court has said, in State v. Ramstad, 87 N.W.2d 736, 737 (N.D.1958), in paragraph 4 of the Syllabus, that the Uniform Business Records as Evidence Act:

"* * * permits a wide discretion on the part of the trial court in passing upon the sufficiency of the foundation of proffered evidence that otherwise comes within the purview of the statute and the ruling of the trial court in this respect will not be disturbed by the appellate court except for a manifest abuse of that discretion."

See also Northern Pacific Railway Co. v. Advance Realty Co., 78 N.W.2d 705, 712 (N.D.1956); Northwestern Improvement Company v. Norris, 74 N.W.2d 497, 504 (N.D.1955). The purpose of the Act is to eliminate the requirement for some of the foundational testimony which formerly was necessary, and the ultimate effect is to expedite the trial of the lawsuit. Even though the business records are admitted more readily under this Act, the weight to be accorded the records is still a matter to be determined by the trier of the facts, be that a jury or, as in the instant case, a judge. State v. Ramstad, *supra*; 30 Am. Jur.2d, Evidence § 933, p. 53 and § 960, p. 89.

A review of the record reveals that the invoices were signed by the mechanics and other employees of Gauvey Rig & Trucking and the affixing of their signatures on the invoices indicates that the merchandise was delivered to the employees of Gauvey Rig & Trucking. The fact that these employees were also employees of Saxe's is not material. The exhibits offered by Seco and by Thomas Auto Supply were admitted into evidence and thus established a prima facie case of sale and delivery to Gauvey Rig & Trucking. General Tire & Rubber Co. v. Hamm, 69 S.D. 72, 6 N.W. 2d 442, 443 (1942); 32A C.J.S. Evidence § 768. After the prima facie case was established, it was then incumbent upon Gauvey Rig & Trucking to show that the sale and delivery of the goods in question were actually made to Saxe. Gauvey Rig & Trucking strenuously contends in support of its objection to the alleged sale and delivery of the merchandise, that there was a complete lack of any proof of sale and delivery to Gauvey Rig & Trucking because of the following reasons:

 The evidence showed that the merchandise was purchased by Saxe, Inc.; Saxe carried on business during the entire

period covered by the items in dispute with both Seco and Thomas; Saxe was engaged in the general contracting business; Gauvey Rig & Trucking, as a result of the auction sale, had only one large truck and certain oil rig attachments designed for the hauling of such equipment; there was no evidence of Gauvey purchasing any other vehicles and thus the repairs furnished by Seco and Thomas were primarily installed on vehicles owned by Saxe; and Gauvey Rig & Trucking did not have any resources with which to purchase merchandise.

Again, a review of the record reveals that the merchandise was purchased by Gauvey Rig & Trucking, in that the purchase orders and invoices, contrary to Gauvey Rig & Trucking's contention, show that the various material items were charged to Gauvey Rig & Trucking and that the signatures of its employees, who were also employed by Saxe, were affixed to the invoices. Gauvey Rig & Trucking next urges that some of the invoices were changed from Saxe to Gauvey Rig & Trucking by deleting the name of Saxe, Inc., and inserting the name of Gauvey Rig & Trucking, but a careful perusal of these invoices shows that the errors, if any, were immediately corrected at the time that the merchandise invoices were signed by authorized personnel of Gauvey Rig & Trucking. Nor does the assertion with reference to Saxe doing business have any effect, in that Gauvey Rig & Trucking was also doing business during this time, as evidenced by the assignment of the accounts receivable, which were accumulated during said period, and as set forth in the release agreement designated as Exhibit B. Likewise, the fact that Gauvey Rig & Trucking may have owned only one vehicle, and that Saxe was the owner of a number of vehicles is not controlling, since there was no testimony adduced by Gauvey Rig & Trucking as to the use or deployment of the vehicles while Gauvey Rig & Trucking and Saxe were both under the ownership of Saxe and the management

and control of Mr. Froshaug, who was the chief executive officer of both corporations.

It is further urged that Gauvey Rig & Trucking did not have any financial resources with which to buy any equipment, by virtue of its limited assets, consisting of the items previously mentioned, and that, in addition, the conditional sales contract establishes conclusively the intention of Gauvey Rig & Trucking to sell all of its assets to Saxe, Inc.

A further review of the record fails to reveal the fact that Gauvey Rig & Trucking was without resources, for the reasons that the evidence adduced at the trial reveals that Gauvey Rig & Trucking was in sound financial condition at the time of the execution of the conditional sales contract, its credit record was excellent, and there is nothing in the record indicating any adverse financial condition of Gauvey Rig & Trucking. On the other hand, the record does show that Gauvey Rig & Trucking had no outstanding liabilities at the time that the assets of the corporation and the stock were assigned to Saxe, Inc., and that the accounts were charged to Gauvey Rig & Trucking by Seco and Thomas.

■ A careful consideration of the record, including the conditional sales contract, fails to sustain the contention of Gauvey Rig & Trucking because Gauvey Rig & Trucking continued to operate as a corporation during the period of time that elapsed, as shown by the Seco and Thomas Auto Supply transactions. The testimony thus adduced by Gauvey Rig & Trucking failed to sustain any of its contentions, because Gauvey Rig & Trucking failed to secure either personal testimony or business records in support of its contentions, and thus did not sustain the burden of proof with reference to the defenses set forth. Gauvey Rig & Trucking had an opportunity to subpoena the officers and the books of the corporation in support of Gauvey Rig & Trucking's contentions. In most jurisdictions the rule is that the failure of a

party to testify under such circumstances gives rise to an inference that his testimony, if it had been elicited, would have been unfavorable to his cause or defense. 29 Am.Jur.2d, Evidence § 187, p. 236. This court has stated, in Scherbenske v. Maier, 71 N.W.2d 770 (N.D.1955), at paragraph 3 of the Syllabus:

"Omission to call or interrogate a witness who possesses peculiar knowledge and would naturally be friendly to the party's contention raises a strong presumption that the testimony, if elicited, would be unfavorable to the party who fails to call or interrogate such witness";

and reaffirmed the above holding in Rozan v. Rozan, 129 N.W.2d 694 (N.D.1964).

The trial court determined that Gauvey Rig & Trucking ordered the merchandise in question and that Seco and Thomas Auto Supply sold and delivered such merchandise to Gauvey Rig & Trucking and that by virtue of the sale and delivery by Seco and Thomas Auto Supply of the merchandise, Gauvey Rig & Trucking became liable therefor.

This court has followed the majority view that the admission of such business records rests within the judicial discretion of the trial court. Northern Pacific Railway Co. v. Advance Realty Co., 78 N.W.2d 705, 712 (N.D.1956); Northwestern Improvement Company v. Norris, 74 N.W.2d 497, 504 (N.D.1955).

■ We have received the entire record and, accordingly, we give the trial court's findings appreciable weight, when based upon the testimony of witnesses who appeared before the trial court. Hillius v. Wagner, 152 N.W.2d 468 (N.D.1967); Parceluk v. Knudtson, 139 N.W.2d 864 (N.D.1966); Pauly v. Haas, 84 N.W.2d 302 (N.D.1957).

■ We agree with the trial court, that the awarding of a judgment to Thomas Auto Supply was correct, and that the awarding of a judgment to Seco was correct, except for a minor modification, which we hereafter explain. Mr. Stockman, the president and general manager of Seco, indicates that no claim was made for the sums set forth in Invoices Nos. 6503, 6505, and 6506, totaling $282.54. However, such invoices and the amounts set forth in these invoices were inadvertently included in Seco's Exhibit No. 3 and, therefore, it is the order of this Court that the sum of $282.54 be deducted from the principal amount of the Seco judgment. The judgment of the district court with reference to Seco is modified to the extent that $282.54 be deducted from the principal amount, and the case is remanded to the trial court with instructions to deduct the same from the principal .amount and to recompute the interest in light of that deduction.

TEIGEN, C. J., and ERICKSTAD, STRUTZ and KNUDSON, JJ., concur.