2005 ND 117

**Judith MARTIN, Petitioner and Appellant**

v.

**STUTSMAN COUNTY SOCIAL SERVICES and the Department of Human Services for the State of North Dakota, Respondents and Appellees.**

No. 20050019.

Supreme Court of North Dakota.

June 22, 2005.

Anita A. Flatt (argued), Legal Services of North Dakota, Fargo, N.D., and Richard R. LeMay (appeared), Legal Services of North Dakota, Minot, N.D., for petitioner and appellant.

Jean R. Mullen, Assistant Attorney General, Office of Attorney General, Bismarck, N.D., for respondents and appellees.

SANDSTROM, Justice.

[¶ 1] Judith Martin appeals a district court judgment affirming an administrative order that she is not eligible to receive home- and community-based services, because she lives in an environment that is a threat to her health and safety. We affirm.

I

[¶ 2] Martin is disabled and receives medicaid benefits through Stutsman County Social Services ("Social Services"). After Martin broke her leg on June 10, 2003, she was admitted to a nursing center from which she was later discharged on October 1, 2003. Prior to her discharge, she applied for home-based services under the Medicaid Waiver for the Aged and Disabled Program. The home-based services program is designed to help aged and disabled persons who are at risk of being

institutionalized, and it would pay for services Martin would receive at home to help her cope with her disabilities. She requested funding for personal care services to assist her during the day from the time she wakens until she goes to bed at night. She requires the use of a lift and personal assistance to transfer in and out of bed and to and from her wheelchair. Home-based services would pay a maximum of $2,400 for a 30–day month.

[¶ 3] Social Services ruled that Martin was not eligible for home-based services, because it estimated the cost would be more than $2,400, and it ruled the services would be provided under conditions that were a threat to her health and safety. Martin appealed, and an administrative law judge ("ALJ") recommended to the executive director of the Department of Human Services ("Department") that home-based services should not be provided to Martin. The Department adopted the ALJ's proposed findings of fact, conclusions of law, and order. The Department found that Martin's care would cost less than the $2,400 allowed by home-based services, but ordered that Martin be denied services because she and her husband smoke in a home in which an oxygen tank is being used. The Department found that Social Services overestimated the cost of Martin's care, but held that Social Services correctly found there were "safety concerns due to Judith Martin and Harold Martin, as well as Ms. Jung, the caregiver, smoking in the apartment as Mr. Martin used oxygen in the home." The Department affirmed Social Services' denial of home-based services, concluding Martin was not eligible for the services because she and her husband smoked in her apartment while her husband used an oxygen tank for breathing. On petition for reconsideration, the Department acknowledged that Martin, but not her husband, smoked in her apartment, and the Department reaffirmed the rest of its order.

[¶ 4] Martin appealed the Department's ruling to the district court. The district court affirmed the denial of benefits, holding that smoking in a house where someone is using oxygen is dangerous. It held the act of smoking near an oxygen tank is a "contraindicated practice" as defined in the North Dakota Administrative Code, requiring the Department to deny services to Martin. Martin appeals the district court judgment.

[¶ 5] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 28–32–42. Martin's appeal to this Court is timely under N.D.C.C. § 28–32–49 and N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. Art. VI, §§ 2 and 6, and N.D.C.C. § 28–32–49.

II

[¶ 6] Martin argues the Department erred in adopting the ALJ's recommendations finding that Martin's husband was a smoker and concluding that Martin's smoking creates a threat to her health and safety because her husband uses an oxygen tank to breathe. Martin argues there was no evidence presented as to the amount of oxygen that would be present in the apartment nor was evidence produced regarding the likelihood of a fire or an explosion occurring if she smoked in her bedroom while her husband used oxygen in a separate room. Martin claims, especially because she is not the person using the oxygen tank, the Department impermissibly concluded it is common knowledge that smoking around oxygen is dangerous.

[¶ 7] Social Services argues that smoking near an oxygen tank is dangerous and that it is explicitly considered dangerous under the North Dakota Administrative Code. It argues Martin was properly de-

nied services, because the Administrative Code's examples of "contraindicated" client behaviors that can lead to termination of services include smoking while oxygen is being used nearby.

■■■ [¶ 8] " 'When a decision of an administrative agency is appealed from the district court to this Court, we review the decision of the agency.' " *Steen v. N.D. Dep't of Human Services,* 1997 ND 52, ¶ 7, 562 N.W.2d 83 (quoting *Walton v. N.D. Dep't of Human Services,* 552 N.W.2d 336, 338 (N.D.1996)). Our review of administrative agency decisions is limited. *Huff v. N.D. State Bd. of Medical Examiners– Investigative Panel B,* 2004 ND 225, ¶ 8, 690 N.W.2d 221.

Under N.D.C.C. §§ 28–32–46 and 28–32–49, the district court, and this Court on further appeal, must affirm an administrative agency decision unless one of the following is present:

1. The order is not in accordance with the law.
2. The order is in violation of the constitutional rights of the appellant.
3. The provisions of this chapter have not been complied with in the proceedings before the agency.
4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
6. The conclusions of law and order of the agency are not supported by its findings of fact.
7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.
8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

*Id.* In reviewing an administrative agency decision, we do not substitute our judgment for that of the agency or make independent findings. *Id.* We decide only whether a reasoning mind reasonably could have concluded the findings were supported by the weight of the evidence in the entire record, and we defer to the hearing officer's opportunity to judge the credibility of witnesses. *Id.* An agency's decisions on questions of law are fully reviewable. *Linser v. Office of Attorney General,* 2003 ND 195, ¶ 6, 672 N.W.2d 643.

A

■■ [¶ 9] Martin argues the ALJ erred in finding that her husband smokes. The ALJ's recommended findings and order provided:

Ms. Martin and her husband smoke in their home. At the time of the assessment, they also allowed Ms. Jung, Ms. Martin's care provider, to smoke in the home. Harold Martin uses oxygen in the home. It is common knowledge among reasonable and prudent persons, that lighting a match or lighter and smoking in an environment where oxygen is present is extremely dangerous as there is a risk of fire or explosion. *Further, it is a contraindicated practice which is specifically spelled out in the Department's rules as an immediate threat to the health or safety of a client, and which can form the basis for denial or termination of Medicaid Waiver program services. N.D. Admin. Code § 75–03–23–11(5). The rule reads that "smoking while using oxygen" is a contraindicated practice. Id.* Ms. Martin took the rather naïve approach that her behavior is not prohibited under the rule

because she does not use oxygen, she only smokes in her own bedroom, and her husband leaves his oxygen out of her room; therefore, she is not smoking while using oxygen. Such an argument is simplistic and specious. It ignores the obvious, that it is dangerous and may be deadly to have open flames or smoke in an environment which is enriched with oxygen, and oxygen, being a gas, permeates the entire apartment. Clearly, the Department may deny Medicaid Waiver program services to Ms. Martin *on the basis that her behavior and/or* her husband's behavior in smoking in their home, in which he uses oxygen, is a threat to Ms. Martin's safety and is therefore, a contraindicated practice under the Department's rule. (Emphasis added.)

[¶ 10] The Department adopted the ALJ's recommendations and denied Ms. Martin home-based services. It held "the evidence of record further shows that the behavior of Ms. Martin and her husband in smoking in the home, in which Mr. Martin uses oxygen, is a contraindicated practice which is an immediate threat to the health or safety of Ms. Martin, under N.D. Admin. Code § 75–03–23–11(5)." Martin requested a rehearing from the Department, arguing the ALJ erred in recommending a finding that Ms. Martin's husband smokes. In its "Order upon Petition for Reconsideration," the Department stated, "Even if Mr. Martin does not smoke, the evidence showed Mrs. Martin does smoke in the home while Mr. Martin uses oxygen. Therefore, the environment is not safe and presents an immediate threat to the health and safety of Mr. and Mrs. Martin."

[¶ 11] Martin's argument that the agency committed reversible error when it incorrectly found her husband smokes is not a factor in this case, because the Department found Martin's behavior, standing alone, was a "contraindicated practice" as defined in the North Dakota Administrative Code. We, therefore, must consider whether Martin's smoking creates a risk requiring the termination of home-based services.

[¶ 12] The Department regulations governing the denial and termination of services provide:

Termination of all SPED program [service payments for elderly and disabled program] and medicaid waiver program services or immediate termination of a specific service must be considered by the department through its aging services division when continued service to the client presents an immediate threat to the health or safety of the client, the provider of services, or others. *Examples of client behaviors that could lead to termination of services include physical abuse of the provider or contraindicated practices, like smoking while using oxygen.* The county social service board shall inform the client in writing the reason for the termination, the right to appeal, and the appeal process, as provided for in chapter 75–01–03.

N.D. Admin. Code. § 75–03–23–11(5) (emphasis added).

[¶ 13] "While an administrative agency is certainly bound by its own duly issued regulations, an agency nevertheless has a reasonable range of informed discretion in the interpretation and application of its own rules." *Bottineau County Water Resource Dist. v. N.D. Wildlife Society,* 424 N.W.2d 894, 900 (N.D.1988) (citations omitted). "Thus, courts generally defer to an agency's reasonable interpretation when the language is so technical that only a specialized agency has the experience and expertise to understand it or when the language is ambiguous." *Id.* "No deference is called for when the regulating language is clear." *Id.* We construe

administrative regulations under well-established principles for statutory construction. *North Dakota Dep't of Human Services v. Ryan*, 2003 ND 196, ¶ 11, 672 N.W.2d 649. "A cardinal rule of statutory construction requires interpretation of related provisions together, if possible, to harmonize and to give meaning to each provision." *Id.*

[¶ 14] We have recently held, "An applicant for medicaid benefits must prove eligibility." *Roberts v. N.D. Dep't of Human Services*, 2005 ND 50, ¶ 7, 692 N.W.2d 922. It is uncontradicted that Martin smokes and lives in the same household in which her husband uses an oxygen tank to breathe. The assessment report states that during a meeting in Martin's apartment, Martin lit a cigarette in front of a social worker and told her that she had given her care provider permission to smoke in the apartment. We need not decide whether it is common knowledge that a person smoking in a separate room could cause a fire or an explosion if a person in another room is using an oxygen tank, because we conclude the Department was not unreasonable in concluding that Martin's smoking was a "contraindicated practice." *See Gross v. N.D. Dep't of Human Services*, 2004 ND 24, 673 N.W.2d 910 (under the deferential standard of review of agency decisions, this Court concluded a reasoning mind could reasonably conclude from the entire record that an agency's interpretation and application of the administrative code was correct).

### B

[¶ 15] Martin argues the Department's rules exceed the authority granted to it by statute. This Court has held that it is a "basic rule of administrative law that an administrative regulation may not exceed statutory authority or supersede a statute, and that a regulation which goes beyond what the Legislature has authorized is void." *Moore v. N.D. Workmen's Compensation Bureau*, 374 N.W.2d 71, 74 (N.D.1985).

[¶ 16] "Administrative rule-making power is predicated on the theory that in certain subjects of governmental regulation public interest is better served by delegating a part of detailed lawmaking to expert administrators who are especially familiar with the subject the legislature has directed them to regulate." *Gofor Oil, Inc. v. State*, 427 N.W.2d 104, 107 (N.D. 1988). "There are many things upon which wise and useful legislation must depend which cannot be known to the lawmaking power, and must therefore be a subject of inquiry and determination outside of the halls of legislation." *Id.* (citations omitted).

[¶ 17] The enabling statute authorizes the Department to "take actions, give directions, and adopt rules as necessary to carry out the provisions" of the human services programs chapter of the code. N.D.C.C. § 50–06.2–03(6). The statute gives the Department the power to make programs available to "individuals who, on the basis of functional assessments, income, and resources, are determined eligible for the services in accordance with rules adopted by the state agency." N.D.C.C. § 50–06.2–03(5). The Department has the power to make available, through county agencies or human services centers, all services on behalf "of those individuals and families determined to be eligible for those services under criteria established by the state agency." N.D.C.C. § 50–06.2–03(3).

[¶ 18] The North Dakota legislature expressly granted the Department the ability to adopt rules governing the eligibility of individuals for its services. The Department did not exceed its authority by defining "contraindicated practices" that could threaten the health or safety of clients, service providers, or others.

[¶ 19]   A reasoning mind could reasonably conclude that Martin's smoking while oxygen was being used in the home was a "contraindicated" activity under the administrative code.  We, therefore, conclude the Department's holding that Martin failed to establish her eligibility for benefits is supported by a preponderance of the evidence and is in accordance with the law.

### III

[¶ 20]   We affirm the district court judgment affirming the Department's decision.

[¶ 21] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, and MARY MUEHLEN MARING, JJ., concur.