2008 ND 49

**Minnie MAKEDONSKY, Appellant**

v.

**NORTH DAKOTA DEPARTMENT OF HUMAN SERVICES, Appellee.**

No. 20070183.

Supreme Court of North Dakota.

March 20, 2008.

Rehearing Denied April 17, 2008.

Damian J. Huettl, Larson, Latham and Huettl, L.L.P., Bismarck, N.D., for appellant.

Jean R. Mullen, Assistant Attorney General, Office of Attorney General, Bismarck, N.D., for appellee.

CROTHERS, Justice.

[¶ 1] Minnie Makedonsky appeals from a district court judgment affirming a North Dakota Department of Human Services' decision denying her application for

Medicaid benefits. She argues the Department erred in deciding assets transferred to her daughters by her attorney-in-fact were available to her for purposes of determining her Medicaid eligibility. We hold a preponderance of evidence supports the Department's findings that a presumption of undue influence regarding the transfers was not rebutted and that assets transferred to Makedonsky's daughters by her attorney-in-fact were available to her for purposes of determining her Medicaid eligibility. We affirm.

I

[¶ 2] Minnie Makedonsky entered a nursing home in Kidder County in August 2002, and the parties stipulated that at all times relevant to her claim for Medicaid benefits, she was mentally competent and capable of understanding her business affairs, but she had physical deficiencies requiring nursing home care. On August 22, 2002, after entering the nursing home, Minnie Makedonsky executed a durable power of attorney, appointing her daughter, JoAnn Makedonsky, as her attorney-in-fact. Between November 2002 and September 2005 JoAnn Makedonsky, as her mother's attorney-in-fact, gifted more than $159,000 in assets to Minnie Makedonsky's four daughters, JoAnn Makedonsky, Carol Schwindt, Rose Mack, and Donita Endrud. On September 8, 2005, Minnie Makedonsky executed a "statement of intention to gift," stating she had freely and voluntarily made those gifts to her daughters and she was not influenced by anyone, including JoAnn Makedonsky, in making those gifts.

[¶ 3] In February 2006, Minnie Makedonsky applied for Medicaid benefits with Kidder County Social Services. The county denied her application, concluding she had made disqualifying transfers of assets. Minnie Makedonsky appealed to the Department of Human Services.

[¶ 4] After an administrative hearing, an administrative law judge ("ALJ") recommended affirming the county's decision. The ALJ said JoAnn Makedonsky was a trustee for Minnie Makedonsky under N.D.C.C. § 59–01–08. The ALJ further said any transaction by which a trustee obtains any advantage from a beneficiary is presumed to be entered into without sufficient consideration and is a result of undue influence under N.D.C.C. § 59–01–16. The Department adopted the ALJ's recommendation and found JoAnn Makedonsky had not rebutted the presumption of undue influence because Minnie Makedonsky had not testified at the administrative hearing to substantiate Minnie's intent to gift her assets or to explain how she intended to pay for her nursing home costs. The Department concluded Minnie Makedonsky's testimony would have been the best evidence to rebut the presumption of undue influence and JoAnn Makedonsky's hearsay testimony about her mother's intent was not credible. The Department was not convinced by Minnie Makedonsky's claim that, before she signed the statement of intention to gift, she had intended to gift her assets to her daughters. The Department recognized an applicant for Medicaid benefits must make a good-faith effort to pursue available legal actions to have assets made available for purposes of Medicaid eligibility. The Department determined Minnie Makedonsky had a cause of action to have the gifted assets returned to her until she signed the statement of intention to gift on September 8, 2005, because under N.D. Admin. Code § 75–02–02.1–33.1(8), "a transfer is complete when the individual ... making the transfer has no lawful means of undoing the transfer or requiring a restoration of ownership." It decided Minnie Makedonsky made a disqualifying transfer when she executed the

statement of intention to gift on September 8, 2005, which was within the thirty-six month look-back period of her February 2006 application for Medicaid benefits. Based on the value of the disqualifying transfer, the ALJ recommended that Minnie Makedonsky's period of ineligibility for Medicaid benefits was from September 2, 2005, through July 15, 2008. The Department adopted the ALJ's recommendation, and the district court affirmed the Department's decision.

## II

[¶ 5] " 'When a decision of an administrative agency is appealed from the district court to this Court, we review the decision of the agency.' " *Martin v. Stutsman County Soc. Servs.*, 2005 ND 117, ¶ 8, 698 N.W.2d 278 (quoting *Steen v. North Dakota Dep't of Human Servs.*, 1997 ND 52, ¶ 7, 562 N.W.2d 83). Under N.D.C.C. § 28-32-49, we review an administrative agency's decision in the same manner as the district court, and we must affirm the agency's decision unless:

"1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of [N.D.C.C. ch. 28-32] have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge."

N.D.C.C. § 28-32-46.

[¶ 6] "Our review of an agency's decision is limited; we will not make independent findings of fact or substitute our judgment for that of the agency," and we will not reverse an agency's decision unless its findings are not supported by a preponderance of the evidence. *J.P. v. Stark County Soc. Servs. Bd.*, 2007 ND 140, ¶ 9, 737 N.W.2d 627. In considering whether an agency's findings of fact are supported by a preponderance of the evidence, we decide "only whether a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record." *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 220 (N.D.1979). "Questions of law are fully reviewable." *Gustafson v. North Dakota Dep't of Human Servs.*, 2006 ND 75, ¶ 6, 712 N.W.2d 599.

## III

[¶ 7] Minnie Makedonsky argues the Department erred in counting assets she gifted to her four daughters through her attorney-in-fact before the applicable look-back period. She asserts the gifts were effective on the date the transfers occurred and not in September 2005, when she signed the statement of intention to ratify the gifts because the ratification related back to the actual date of the transfers. She contends JoAnn Makedonsky was authorized to gift the assets under N.D.C.C. § 30.1-30-06, which allows an attorney-in-fact to make gifts if the attorney-in-fact has authority to perform any

act the principal may perform. She claims the Department erred in counting the assets gifted by JoAnn Makedonsky to the other three daughters because Minnie Makedonsky had a confidential relationship with only JoAnn Makedonsky and not with the other three daughters. She argues the evidence establishes the presumption of undue influence was successfully rebutted and the assets were not available to her for purposes of her Medicaid eligibility.

[¶ 8] The Department counters that a Medicaid applicant must take affirmative steps showing an asset cannot be made available and that the date Minnie Makedonsky signed the statement of intention to gift, September 8, 2005, was the date she relinquished her legal right to sue for the return of assets gifted by her attorney-in-fact. The Department argues that evidence supports its findings that Minnie Makedonsky made a disqualifying transfer when she signed the statement of intention to gift and that she did not rebut the presumption of undue influence that arose when her attorney-in-fact gained an advantage from her. The Department contends the assets were available to Minnie Makedonsky for purposes of her Medicaid eligibility.

[¶ 9] In *Estate of Pladson v. Traill County Soc. Servs.*, 2005 ND 213, ¶¶ 10–11, 707 N.W.2d 473, we outlined the legal framework for assessing an applicant's eligibility for Medicaid benefits:

"Generally, a person without sufficient assets to meet the cost of necessary medical care and services is eligible for Medicaid benefits. *Schmidt v. Ward County Soc. Servs. Bd.*, 2001 ND 169, ¶ 9, 634 N.W.2d 506. The Medicaid program is intended to be a payor of last resort, and available resources must be exhausted before Medicaid will pay for an individual's care. *Wahl v. Morton County Soc. Servs.*, 1998 ND 48, ¶ 18, 574 N.W.2d 859. An applicant for Medicaid benefits must prove eligibility. *Roberts [v. North Dakota Dep't of Human Servs.]*, 2005 ND 50, ¶ 7, 692 N.W.2d 922. Under the Department's rules for determining Medicaid eligibility, a one-person unit is eligible for Medicaid benefits if the total value of that person's assets does not exceed $3,000. N.D. Admin. Code § 75–02–02.1–26(1)(a); *Linser v. Office of Attorney General*, 2003 ND 195, ¶ 7, 672 N.W.2d 643. An 'asset' is defined as 'any kind of property or property interest, whether real, personal, or mixed, whether liquid or illiquid, and whether or not presently vested with possessory rights.' N.D. Admin. Code § 75–02–02.1–01(2). Although certain assets are exempt or excluded from consideration, *see* N.D. Admin. Code §§ 75–02–02.1–27 and 75–02–02.1–28, other assets that are 'actually available' must be considered in determining the applicant's eligibility for Medicaid. N.D. Admin. Code § 75–02–02.1–25(1); *Estate of Gross v. North Dakota Dep't of Human Servs.*, 2004 ND 190, ¶ 8, 687 N.W.2d 460. Assets are 'actually available' under N.D. Admin. Code § 75–02–02.1–25(1) when the assets are at the disposal of the applicant, recipient, or responsible relative who has a legal interest in a liquidated sum and that person has the legal ability to make the sum available for support, maintenance, or medical care." *Estate of Gross*, at ¶ 8.

"Determining whether an asset is 'actually available' for purposes of Medicaid eligibility is largely a fact-specific inquiry depending on the circumstances of each case. *Linser*, 2003 ND 195, ¶ 11, 672 N.W.2d 643. The 'actually available' requirement must be interpreted reasonably, and the focus is on the applicant's actual and practical ability to

make an asset available as a matter of fact, not legal fiction. *Opp v. Ward County Soc. Servs. Bd.*, 2002 ND 45, ¶ 11, 640 N.W.2d 704."

[¶ 10] An asset need not be in hand to be "actually available," and an applicant may be required to initiate appropriate legal action to make the asset available. *Linser v. Office of Attorney Gen.*, 2003 ND 195, ¶ 11, 672 N.W.2d 643; *Opp v. Ward County Soc. Servs. Bd.*, 2002 ND 45, ¶ 11, 640 N.W.2d 704; *Schmidt v. Ward County Soc. Servs. Bd.*, 2001 ND 169, ¶¶ 13–14, 634 N.W.2d 506; *Post v. Cass County Soc. Servs. Bd.*, 556 N.W.2d 661, 664–65 (N.D.1996). If an applicant has a colorable legal action to obtain assets through reasonable legal means, the assets are available and the burden is on the applicant to show a legal action would be unsuccessful. *Linser*, at ¶ 11; *Opp*, at ¶¶ 22–23; *Post*, at 665.

[¶ 11] Minnie Makedonsky's claim involves whether the transfers by her attorney-in-fact to her daughters were gifts. A valid gift requires an intention by the donor to then and there give the property to the donee, coupled with an actual or constructive delivery of the property to the donee and acceptance of the property by the donee. *Bellon v. Bellon*, 244 N.W.2d 227, 228 (N.D.1976); *In re Paulson's Estate*, 219 N.W.2d 132, 134 (N.D.1974); *In re Kaspari's Estate*, 71 N.W.2d 558, 567 (N.D.1955); *Zeman v. Mikolasek*, 75 N.D. 41, 53, 25 N.W.2d 272, 279 (1946). The pivotal issue in this case involves whether Minnie Makedonsky intended to gift her property when the transfers were made.

[¶ 12] JoAnn Makedonsky, as Minnie Makedonsky's attorney-in-fact, had a relation of personal confidence with Minnie Makedonsky, and JoAnn Makedonsky is deemed a trustee under N.D.C.C. § 59–01–08, the statute in effect when these transactions occurred. *See* 2007 N.D.

Sess. Laws ch. 549, § 27 (repealing N.D.C.C. ch. 59–01 and adopting Uniform Trust Code). Although JoAnn Makedonsky had authority to gift Minnie Makedonsky's property under N.D.C.C. § 30.1–30–06, that authority must be construed together with other statutes regarding obligations of an attorney-in-fact and trustee. *See In re Estate of Elken*, 2007 ND 107, ¶ 7, 735 N.W.2d 842 (statutes construed as a whole and harmonized to give meaning to related provisions). All transactions between a trustee and a beneficiary, including gifts, are presumed to be without sufficient consideration and under undue influence. N.D.C.C. § 59–01–16. *See* 2007 N.D. Sess. Laws ch. 549, § 27 (repealing N.D.C.C. ch. 59–01 and adopting Uniform Trust Code).

[¶ 13] Minnie Makedonsky had the burden of rebutting the presumption that the gifts were made without sufficient consideration and under undue influence. *See Estate of Zins*, 420 N.W.2d 729, 731 (N.D.1988). Although Minnie Makedonsky asserts some of the gifts were to daughters other than the attorney-in-fact, the Department claims, "[t]ransfers to close family members are and always must be suspect, for a number of reasons, not the least of which is the likelihood of collusion resulting in a subsequent redistribution of the assets to the Attorney–in–Fact." According to JoAnn Makedonsky, the daughters "plan[ned] to divide [equally] anything, any assets that are still available at the time of Minnie's passing." The Department decided JoAnn Makedonsky had not rebutted the presumption of undue influence because Minnie Makedonsky had not testified at the administrative hearing to substantiate Minnie Makedonsky's intent to gift her assets or explain how she intended to pay for her nursing home costs. The Department acknowledged that JoAnn Makedonsky testified

she called her mother each time a transfer was made and Minnie Makedonsky would ask if she had transferred the property yet. The Department decided, however, Minnie Makedonsky's testimony would have been the best evidence to rebut the presumption of undue influence and JoAnn Makedonsky's hearsay testimony about her mother's intent was not credible. The Department rejected Minnie Makedonsky's assertion that, before she signed the statement of intention to gift, she had intended to gift her assets to her daughters. The Department concluded Minnie Makedonsky had not carried her burden of establishing eligibility for Medicaid benefits.

[¶ 14] This record contains credible evidence supporting the Department's findings that Minnie Makedonsky did not intend to gift her assets to her daughters when those transfers were made, including the Department's reliance on Minnie Makedonsky's failure to testify at the administrative hearing, which the Department found raised questions about JoAnn Makedonsky's credibility, and the testimony about the daughters' "plan" to divide the assets equally after Minnie's death. In assessing credibility, the Department was entitled to draw an adverse inference from Minnie Makedonsky's failure to testify at the administrative hearing. See Seco, Inc. v. Gauvey Rig & Trucking Co., 166 N.W.2d 397, 402–03 (N.D.1969); Rozan v. Rozan, 129 N.W.2d 694, 709 (N.D.1964); Scherbenske v. Maier, 71 N.W.2d 770, 775 (N.D.1955). The parties also stipulated that, at all times relevant to this proceeding, Minnie Makedonsky was mentally competent and capable of understanding her business affairs, but that she had physical deficiencies requiring nursing home care. Although Minnie Makedonsky may have had the capacity to make these gifts when they were made, her attorney-in-fact made these transfers, which implicated the presumption of undue influence

and factual issues about her intent. There is evidence supporting the Department's credibility and factual determinations regarding the transfers and Minnie Makedonsky's intent, and we do not reweigh that evidence.

[¶ 15] We also reject Minnie Makedonsky's claim that her ratification of the gifts in September 2005 was retroactive to the actual date of the transfers under Matter of Mehus' Estate, 278 N.W.2d 625, 630 (N.D.1979) and Askew v. Joachim Mem'l Home, 234 N.W.2d 226, 237 (N.D.1975). A principal's valid ratification can relate back to the date an agent transferred the principal's property. See Mehus, at 630; Askew, at 237. Here, however, the Department found Minnie Makedonsky lacked intent when the transfers were made and the gifts were revocable until she executed the statement of intention to gift. This case is about Medicaid eligibility under the Department's regulations, and those regulations provide that "[a] [disqualifying] transfer is complete when the individual ... has no lawful means of undoing the transfer or requiring a restoration of ownership." N.D. Admin. Code § 75–02–02.1–33.1(8). We conclude the Department's Medicaid regulations control the date of a disqualifying transfer for purposes of Minnie Makedonsky's eligibility for Medicaid benefits.

[¶ 16] "Recognizing the constitutional doctrine of separation of powers, our standard of review in cases such as this does not allow us to make independent findings of fact or to substitute our judgment for that of the agency fact finder." Linser, 2003 ND 195, ¶ 11, 672 N.W.2d 643 (citing Wagner v. Sheridan County Soc. Servs. Bd., 518 N.W.2d 724, 729 (N.D.1994)). Evidence in this record supports the Department's findings that Minnie Makedonsky did not intend to gift her assets, that the presumption of undue influence was not

rebutted, and that Minnie Makedonsky failed to establish her eligibility for Medicaid benefits. A reasoning mind could reasonably conclude, as the Department did, that Minnie Makedonsky did not intend to gift her assets, that the presumption of undue influence was not rebutted, and that Minnie Makedonsky's assets were actually available to her until she executed the statement of intention to gift on September 8, 2005. Under the Department's Medicaid regulations, her action constitutes a disqualifying transfer within the look-back period and disqualifies her from receiving Medicaid benefits.

## IV

[¶ 17] We affirm the judgment affirming the Department's decision.

[¶ 18] GERALD W. VANDE WALLE, C.J., and DALE V. SANDSTROM, J., concur.

MARING, Justice, dissenting.

[¶ 19] I respectfully dissent. I would reverse the district court judgment and remand this matter to the North Dakota Department of Human Services for a redetermination of Minnie Makedonsky's ("Makedonsky") eligibility for Medicaid benefits. Because Makedonsky made completed gifts without undue influence, she has no legal ability to make the gifted property available under N.D. Admin.Code § 75–02–02.1–25. The Statement of Intention to Gift signed by Makedonsky acknowledged that she made those gifts and, even if treated as a mere ratification, it related back to the date of the transfers Makedonsky made to her daughters. I would further hold that the amounts transferred before the thirty-six month look-back period and acknowledged or ratified by the Statement of Intention to Gift were not available to her for purposes of determining her Medicaid eligibility.

[¶ 20] The majority opinion makes the same error of law the ALJ made. The majority misinterprets N.D. Admin. Code §§ 75–02–02.1–25 and 75–02–02.1–33.1(8) and ignores agency law.

[¶ 21] Assets that are "actually available" must be considered in determining eligibility for Medicaid. N.D. Admin. Code § 75–02–02.1–25(1). Assets are "actually available" when "the assets are at the disposal of the applicant, recipient, or responsible relative who has a legal interest in a liquidated sum and that person has the legal ability to make the sum available for support, maintenance, or medical care." *Estate of Pladson v. Traill Co. Social Services*, 2005 ND 213, ¶ 10, 707 N.W.2d 473 (citing *Estate of Gross v. North Dakota Dep't of Human Servs.*, 2004 ND 190, ¶ 8, 687 N.W.2d 460); see N.D. Admin. Code § 75–02–02.1–25. "Interpretation of the 'actually available' requirement must be reasonable, and *the focus is on the applicant's actual and practical ability to make an asset available as a matter of fact, not legal fiction.*" *Opp v. Ward Co. Social Services Bd.*, 2002 ND 45, ¶ 11, 640 N.W.2d 704 (emphasis added). The majority relies on the premise that until Makedonsky signed the Statement of Intention to Gift she could have brought a legal action to have the gifts returned to her. The majority ignores that her legal cause of action would have been unsuccessful.

[¶ 22] Makedonsky made gifts to her daughters, including the daughter who executed some of the gift documents as Makedonsky's agent. A gift is a transfer of personal property made voluntarily and without consideration. N.D.C.C. § 47–11–06. The requirements for a valid inter vivos gift are: (1) an intent to give; (2) delivery of the gift, either actual or constructive; and (3) an acceptance of the gift by the donee. *Kolouch v. Bond*, 219 N.W.2d 132, 134 (N.D.1974). The record

indicates that those requirements are met. All documents necessary to transfer the gifted items and to record the transfer of the real property interests appear of record. The transfers were complete and Makedonsky, as the donor of completed gifts, had no legal ability to compel the return of the property. *See Zeman v. Mikolasek*, 75 N.D. 41, 53, 25 N.W.2d 272, 279 (1946) (quoting *Ramsdell v. Warner*, 48 N.D. 96, 183 N.W. 281, 283 (1921) (stating "To have the effect of a valid gift, therefore, the transfer of possession and title must be absolute and go into immediate effect, so far as the donor can make it so by intent and delivery, and must be so complete that if he again resumes control over it without consent of the donee he becomes liable as a trespasser.")).

[¶ 23] Some of the documents to complete the gifts were executed by daughter JoAnn Makedonsky, Makedonsky's agent under a Durable Power of Attorney, and not merely under the statute as the majority asserts in ¶ 12. "Every act which legally may be done by or to any person may be done by or to the agent of such person." N.D.C.C. § 3–02–01. The mere fact the gifts were completed through an agent does not negate the effectiveness of the act. The exception to this is when an agent violates the agent's duty in circumstances giving rise to a presumption of undue influence. The Department wants Makedonsky to bring a lawsuit attacking the transfer on the basis of a statutory rebuttable presumption that the gifts to JoAnn Makedonsky, as trustee, were without sufficient consideration and made under undue influence.

[¶ 24] Under N.D.C.C. § 59–01–16 (2006), a transaction whereby a trustee gains an advantage from the beneficiary is "presumed to be entered into by the latter without sufficient consideration and under undue influence." *See* 2007 N.D. Sess. Laws ch. 549, § 27 (repealing N.D.C.C. ch. 59–01 and enacting the N.D. Uniform Trust Code, § 59–09–01 et. seq.). When an agent gains such an advantage, the burden is on the agent to rebut the presumption. *Mehus v. Mehus*, 278 N.W.2d 625, 632 (N.D.1979). In this case, the presumption of undue influence arose because Makedonsky's agent, her daughter JoAnn, received gifts from Makedonsky. This presumption was overcome, however, when Makedonsky executed the Statement of Intention to Gift. By signing the Statement, Makedonsky made clear that it was her intent to give, that she made the gifts, and that she was under no compulsion to do so. The Department accepts the validity of the Statement because it treats the date on which the Statement was signed as the date Makedonsky relinquished her right to reclaim the gifts. Because the gifts were valid and the presumption of undue influence was overcome, Makedonsky has no legal ability to compel the return of the property. To suggest otherwise would be to suggest that Makedonsky must perjure herself in order to attempt to undo an intentional, completed gift. That would involve a legal impropriety, not a legal obligation. Makedonsky has no legal interest in the gifted property and no legal ability to obtain the assets. *See Zeman*, 75 N.D. 41, 25 N.W.2d 272. Those given away outside the look-back period are not available under N.D. Admin. Code § 75–02–02.1–25 for purposes of determining eligibility.

[¶ 25] The majority treats the Statement of Intention to Gift as a mere ratification although its content indicates it was not intended merely to ratify the prior acts of Makedonsky's agent, but rather to show that the acts previously done through her agent were, in fact, Makedonsky's own acts at the time they were made. The Statement provides, in part:

I, Minnie Makedonsky, state and memorialize that, as a reflection of my love and affection, *I made* previous gifts of cash, life insurance, and a remainder interest in my home totaling $148,703.77 to my children, including my daughter and attorney-in-fact, JoAnn Makedonsky. I was not influenced by anyone, including JoAnn, in any way to make these gifts and I did it freely and voluntarily. Likewise, I intend to continue making future gifts of my assets to my children, including JoAnn, or any other child that may serve as my attorney-in-fact, and my intention to make future gifts to my children or any trusts in which my children are beneficiaries has not been influenced by any of my children in any way.

(Emphasis added.)

[¶ 26] Makedonsky, therefore, established that any legal action brought within the thirty-six month look-back period would have been unsuccessful. The transfers were made by Makedonsky, as a matter of fact, on their original dates.

[¶ 27] The Department has stipulated that Makedonsky was a competent individual and accepts this Statement as Makedonsky's valid act. For purposes of eligibility, the Department cannot have it both ways. It cannot treat the Statement of Intention to Gift as a valid act, a document of legal significance executed by a competent person, but ignore its contents. The Statement is clear that Makedonsky herself made those gifts, that it was her intention to do so, and she was not under undue influence.

[¶ 28] Even if the Statement of Intention to Gift is treated merely as a ratification, the law applicable to ratifications indicates that the ratification would relate back to the date of transfer, thus treating those gifts made outside the look-back period as not available for purposes of determining eligibility.

[¶ 29] The majority ignores the legal effect of a ratification. The Statement made in September 2005, if a ratification of the gifts, related back to the actual date of the transfers. Ratification is "[t]he affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him." *Askew v. Joachim Mem'l Home*, 234 N.W.2d 226, 237 (N.D.1975) (quoting Restatement (Second) of Agency § 82, at 210 (1958)). Ratification is equivalent to an original grant of authority. 12 Richard A. Lord, *Williston on Contracts* § 35:22, at 272–73 (4th ed.1999) (citation omitted). Ratification "relates back and supplies original authority to execute the contract." *Id.* at 270; *see also Lewis v. Washington Metro. Area Transit Auth.*, 463 A.2d 666, 672 (D.C.App.1983) (principal "is bound by the agent's act *nunc pro tunc*"). As is explained in the Restatement (Second) of Agency,

> The concept of ratification is not a legal fiction, but denotes the legal consequences which result from a series of events beginning with a transaction inoperative as to the principal, and ending in an act of validation. The statement that there is a relation back to the time of the original act is fictitious in form, but in effect, it is a statement of liabilities. The concept is unique .... *it operates as if the transaction were complete at the time and place of the first event, rather than the last ....*

Restatement (Second) of Agency § 82 cmt. c. (1958) (emphasis added).

[¶ 30] When these ratification principles are applied to Makedonsky, the ratification by Makedonsky of any gifts made before the look-back period would relate

back to the date of the original transfers and would supply original authority to execute the transfers. Thus, the dates on which those transfers were made would remain the dates on which the transfers occurred for purposes of determining Makedonsky's Medicaid eligibility. The effective dates of the gifts would not be September 2005, the date on which she signed the Statement of Intention to Gift.

[¶ 31] To support its rejection of Makedonsky's claim that her ratification of the gifts in September 2005 was retroactive to the actual date of the transfers, the majority cites *Mehus v. Mehus,* 278 N.W.2d 625 (N.D.1979), and *Askew v. Joachim Mem'l Home,* 234 N.W.2d 226 (N.D.1975). Neither of these cases addresses whether a principal's subsequent ratification of an agent's act relates back to the date of the agent's original unauthorized act. Both cases are distinguishable from Makedonsky's case.

[¶ 32] In *Mehus,* we affirmed a district court decision affirming an order of a county probate court that a son who served as coattorney-in-fact for his mother was not entitled to savings certificates he purchased with his mother's assets and held with his mother as a joint tenant with right of survivorship. 278 N.W.2d 625. We reached that conclusion because the son did not overcome the statutory presumption of undue influence. *Id.* at 634. The son purchased the saving certificates. *Id.* at 628. The mother ratified the son's purchase of the savings certificates by implication. *Id.* at 631. However, we held that the trial court's finding that the son failed to overcome the presumption of undue influence was not clearly erroneous. *Id.* at 633. In this case, even if the Statement is treated as a mere ratification, it is express, not implied. The Statement itself, accepted by the Department, is the "credible evidence that the fact presumed does not

exist" as required by N.D.R.Ev. 301 and there is no evidence in the record to the contrary.

[¶ 33] In *Askew,* the board of directors of an association that operated a retirement home did not expressly ratify an agreement entered into by the association's president with another party. 234 N.W.2d 226. We held that the agreement was enforceable because it was ratified by the board of directors by implication. *Id.* at 239. Evidence of ratification existed because the board of directors "acted in such a manner that it voluntarily assumed the responsibility of the terms of the originally unauthorized agreement ... without making reasonable inquiry into the nature of the terms contained in that agreement." *Id.* at 238. Like *Mehus,* whether the board's ratification related back to the date of the initial agreement between the board of director's agent and the third party was not at issue in *Askew.*

[¶ 34] Here, the ALJ did not question the validity of Makedonsky's Statement of Intention to Gift executed subsequent to the transfers to her daughters and impliedly found Makedonsky made an express ratification of the gifts. The recommended findings of the ALJ adopted by the Department and affirmed by the district court stated,

> Minnie had the right to have the assets returned to her until she signed the Statement of Intention to Gift on September 8, 2005.... The gifts were revocable until Minnie executed the Statement of Intention to Gift, at which time she ratified the gifts and her statement became in effect, her release of her *chose in action.*

The ALJ then concluded that "the transfer became complete when Minnie signed the Statement of Intention to Gift on September 8, 2005." The ALJ wrote,

> In this case, the disqualifying transfer occurred when Minnie executed the

Statement of Intention to Gift on September 8, 2005, *and no longer had any lawful means of undoing the transfers or requiring a restoration of ownership of her assets. It was on that date that she gave up the right to revoke the gifts and have her assets returned to her.* That date falls within the thirty-six month look-back date. Therefore, the assets transferred by her attorney-in-fact are considered disqualifying transfers under Medicaid rules in N.D. Admin. Code § 75–02–02.1–33.1.

(emphasis added).

[¶ 35] When the ALJ considered whether Makedonsky overcame the presumption of undue influence, the ALJ failed to consider the effect of an express ratification of the transfers. A principal can consent to conduct by an agent that would otherwise constitute a breach of the agent's duty. Restatement (Third) of Agency § 8.06 (2006). The Restatement provides that a principal's consent will be valid, provided,

> (a) in obtaining the principal's consent, the agent
>> (i) acts in good faith,
>> (ii) discloses all material facts that the agent knows, has reason to know, or should know would reasonably affect the principal's judgment unless the principal has manifested that such facts are already known by the principal or that the principal does not wish to know them, and
>> (iii) otherwise deals fairly with the principal; and
> (b) the principal's consent concerns either a specific act or transaction, or acts or transactions of a specified type that could reasonably be expected to occur in the ordinary course of the agency relationship.

*Id.* When "a principal consents after-the-fact to action taken by an agent that would otherwise breach the agent's fiduciary duty to the principal, the principal has the opportunity to assess what the agent has done with a degree of specificity not available before the agent takes action." *Id.* at cmt. b.

[¶ 36] Here, if Makedonsky's Statement is treated as a ratification, the validity of which the ALJ acknowledges in the recommended findings and conclusions, the Statement rebutted the presumption of undue influence, related back to the original date of the transfers to Makedonsky's daughters and supplied original authority to execute the transfers. Makedonsky had the opportunity to assess the earlier transfers to her daughters. The Statement of Intention to Gift reveals that Makedonsky "freely and voluntarily" consented to the transfers, and "freely and voluntarily" executed the Statement of Intention to Gift. Her "ratification" of the transfers related back to the original date on which the transfers occurred. Makedonsky established there was no viable legal action to compel the return of the property. Thus, any of the transfers at issue in this case made before the thirty-six month look-back period were not relevant to Makedonsky's Medicaid eligibility determination.

[¶ 37] For these reasons, I would reverse the district court judgment and the decision of the North Dakota Department of Human Services and would remand for a redetermination of Minnie Makedonsky's eligibility for Medicaid benefits. The property transferred before the thirty-six month look-back period was not available to her for purposes of determining her Medicaid eligibility.

[¶ 38] MARY MUEHLEN MARING, CAROL RONNING KAPSNER, JJ., dissent.