2004 ND 190

### The ESTATE OF George GROSS, Appellant

v.

### NORTH DAKOTA DEPARTMENT OF HUMAN SERVICES, Appellee.

No. 20040071.

Supreme Court of North Dakota.

Oct. 12, 2004.

Rehearing Denied Nov. 19, 2004.

Gregory C. Larson (argued), Damian J. Huettl (appeared), Wheeler Wolf, Bismarck, N.D., and Bradley D. Peterson (appeared), Legal Services of ND, Bismarck, N.D., for appellant.

Jean R. Mullen, Assistant Attorney General, Office of Attorney General, Bismarck, N.D., for appellee.

SANDSTROM, Justice.

[¶1] The Estate of George Gross appeals from a judgment affirming a Department of Human Services' decision that Gross's total countable assets for his household exceeded the maximum allowed for medicaid eligibility. We hold the Department's finding that George Gross's wife, Julia Gross, did not make a good faith effort to sell the monthly payments from a nonassignable annuity is supported by a preponderance of the evidence, and we affirm.

I

[¶2] George Gross was institutionalized at the Napoleon Care Center from June 14, 2002, until his death on December 27, 2003. Logan County Social Services denied his September 11, 2002, application for medicaid benefits, concluding his count-

able assets for purposes of his household's medicaid eligibility were $215,354.08 and exceeded the allowed amount of $92,280, which consisted of $3,000 for his personal exemption and $89,280 for a community spouse asset allowance for Julia Gross.

[¶ 3] George Gross appealed to the Department, and after a hearing, an administrative law judge recommended affirming the denial of benefits by Logan County Social Services. The Department adopted the administrative law judge's recommendation and denied benefits. The Department concluded a nonassignable $150,000 annuity purchased by and issued to Julia Gross in July 2002 was an available asset for purposes of determining George Gross's medicaid eligibility. Under the terms of the annuity, which the Department found were actuarially sound, Julia Gross paid $150,000 and contracted to receive sixty payments of $2,855.91 per month beginning on August 22, 2002. The Department concluded Julia Gross's ownership of the annuity and the monthly payments from the annuity constituted ownership of a contractual right to receive a money payment, and George Gross had not rebutted a presumption that her right to receive money payments from the annuity was saleable without working an undue hardship under N.D. Admin. Code § 75-02-02.1-30. The Department decided, although the annuity was not assignable, the stream of income from the annuity was an available asset because it could be sold in a factors market. The Department found Julia Gross had "offered only the annuity contract itself for sale, and not the contractual rights to receive money payments, or stream of income from the annuity," and she "did not offer to sell her contractual rights to receive money payments, or the 'stream of income' from the annuity, for 75% of fair market value." The Department found a preponderance of evidence established Julia Gross had failed to make

a good faith effort to sell the stream of income from the annuity, and she had not demonstrated her contractual rights to receive money payments were not saleable without working an undue hardship.

[¶ 4] George Gross appealed the Department's decision to the district court. He died pending the appeal to the district court, and his Estate was substituted as the appellant. The district court affirmed the Department's decision, concluding a reasoning mind reasonably could have determined the Department's factual decision that Julia Gross failed to make a good faith effort to sell her rights to the income stream from the annuity was proved by the weight of the evidence from the entire record.

[¶ 5] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 28-32-42. The Estate's appeal to this Court is timely under N.D.C.C. § 28-32-49 and N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. Art. VI, §§ 2 and 6, and N.D.C.C. § 28-32-49.

II

[¶ 6] Although a district court's analysis of an appeal from a decision by an administrative agency is entitled to respect if the court's reasoning is sound, when an administrative agency's decision is appealed from the district court to this Court, we review the agency's decision and the record compiled before the agency rather than the district court's decision and findings. *Gross v. North Dakota Dep't of Human Servs.*, 2004 ND 24, ¶ 6, 673 N.W.2d 910. Under N.D.C.C. §§ 28-32-46 and 28-32-49, we affirm an agency's decision if its findings of fact sufficiently address the evidence and are supported by a preponderance of the evidence, its conclusions of law and order are supported by its find-

ings of fact, its decision is supported by its conclusions of law, its decision is in accordance with the law and does not violate the claimant's constitutional rights, its rules or procedures have not deprived the claimant of a fair hearing, its conclusions of law and order sufficiently explain its rationale for not adopting a contrary recommendation by an administrative law judge, and the provisions of N.D.C.C. ch. 28–32 have been complied with in proceedings before the agency. In reviewing an agency's findings of fact, we do not make independent findings of fact or substitute our judgment for that of the agency. *Gross,* at ¶ 6. Rather, we determine only whether a reasoning mind reasonably could have determined the agency's factual conclusions were supported by the weight of the evidence from the entire record. *Id.* An agency's decision on a question of law is fully reviewable by this Court. *Wahl v. Morton County Soc. Servs.,* 1998 ND 48, ¶ 4, 574 N.W.2d 859.

### III

[¶ 7] The Estate argues the Department erred in deciding Julia Gross's annuity was a countable asset for purposes of George Gross's medicaid eligibility.

[¶ 8] An applicant for medicaid benefits must prove eligibility. *Opp v. Ward County Soc. Servs. Bd.,* 2002 ND 45, ¶ 10, 640 N.W.2d 704; *Kryzsko v. Ramsey County Soc. Servs.,* 2000 ND 43, ¶ 7, 607 N.W.2d 237. Medicaid law includes provisions to prevent the impoverishment of a "community spouse" while the "institutionalized spouse" resides in a nursing home. *Wahl,* 1998 ND 48, ¶ 11, 574 N.W.2d 859. An "institutionalized spouse" is an individual who is in a medical institution or nursing facility and is married to an individual who is not in a medical institution or nursing facility, while the "community spouse" is the spouse of the institu-

tionalized spouse. *Id.* An institutionalized spouse is eligible for medicaid benefits if the total value of all countable assets of the community spouse and the institutionalized spouse does not exceed the community spouse asset limit plus the institutionalized spouse asset limit. N.D. Admin. Code § 75–02–02.1–24(2)(g) (at the time of the Department order, now 75–02–02.1–24(2)(h)). The parties agree the asset limit for an institutionalized spouse is $3,000, and at the time of George Gross's application for benefits, the asset limit for a community spouse was $89,280. All assets must be considered in establishing medicaid eligibility, and an asset is "any kind of property or property interest, whether real, personal, or mixed, whether liquid or illiquid, and whether or not presently vested with possessory rights." N.D. Admin. Code § 75–02–02.1–01(3) (now 75–02–02.1–01(2)). An asset must be actually available to the applicant to be considered a countable asset. N.D. Admin. Code § 75–02–02.1–25(2) (now 75–02–02.1–25(1)). Assets are actually available when at the disposal of an applicant, recipient, or responsible relative who has a legal interest in a liquidated sum and has a legal ability to make the sum available for support, maintenance, or medical care. *Id.*

[¶ 9] "Contractual rights to receive money payments" are available assets. N.D. Admin. Code § 75–02–02.1–32(5) (now 75–02–02.1–30(1)). There is a presumption a holder's interest in a contractual right to receive money payments is saleable without working an undue hardship, and the presumption may be rebutted by evidence demonstrating the contractual right to receive money payments is not saleable without working an undue hardship. N.D. Admin. Code § 75–02–02.1–30 (now 75–02–02.1–30(2)). "Property which is not saleable without working an undue hardship" means property that the owner

has made a good faith effort to sell and has produced no buyer willing to pay an amount equal to or exceeding seventy-five percent of the fair market value of the property. N.D. Admin. Code § 75–02–02.1–01(24) (now 75–02–02.1–01(23)). A "good faith effort to sell" means an honest effort to sell in a manner that is reasonably calculated to induce a willing buyer to believe the property offered for sale is actually for sale at a fair price and includes, at a minimum, making an offer equal to seventy-five percent of the fair market value of the property. N.D. Admin. Code § 75–02–02.1–01(13) (now 75–02–02.1–01(12)).

[¶ 10] The Estate argues the Department erroneously found Julia Gross failed to make a good faith effort to sell the annuity. The Estate argues Julia Gross made an unsuccessful, good faith attempt to sell the annuity, and the Department should not have found the annuity to be a countable asset. The Estate concedes the annuity itself is a contractual right to receive money payments, but argues the evidence clearly establishes there was no market for the sale of the annuity itself because it was not assignable. The Estate argues the Department's decision that Julia Gross should have attempted to sell the income stream separately from the annuity is contrary to law.

[¶ 11] The Estate offered some evidence through its witness, Dale Krause, that there were no buyers for Julia Gross's annuity because it was not assignable, and at least two entities declined to buy the annuity because it was not assignable. Blaine Nordwall, the Department's Director for Economic Assistance Policy, testified, however, there is a factors market for selling payments, or the income stream, from an instrument such as the annuity. Although the Estate characterizes Nordwall's testimony as a "belief" there was a market for the income stream from the annuity and argues that evidence does not reasonably support the Department's decision, Nordwall's testimony is more definite than a "belief." At the administrative hearing, the following colloquy occurred:

MS. MULLEN: Mm-hmm. The testimony that was given prior to this concerned the nonassignability of the particular annuity that Ms. Gross purchased. And if the annuity is not assignable, how can it be an available asset?

MR. NORDWALL: Well, what you have is a bundle of rights associated with an annuity. One of those rights, if the annuity has been annuitized, if there's been a, an arrangement entered into with the issuing company to, for a stream of payments, it is those payments. But, but there are other rights associated with ownership, typically the ability to designate beneficiaries, sometimes the ability to choose a payout method or, or time, and the ability to transfer the contract by assignment to an, another, another person. Such a transfer doesn't change who's the annuitant. But it changes who receives the, the payments. And this annuity that is not assignable is still subje [sic], the, the individual who is the annuitant, has the right to the stream of income, the payments that are received, and those are, constitute a contractual right to receive money payments. We treat those as, because they can be, they can be conveyed to somebody else.

MS. MULLEN: Who would buy it?

MR. NORDWALL: Well, there's, there's a, who would be, I'll answer that in the sense of a category of individuals as opposed to . . .

MS. MULLEN: Is there a market for them?

MR. NORDWALL: There's a market, Certainly ...

MS. MULLEN: Yeah ...

MR. NORDWALL: Certainly there's a market. I usually refer it to as a Factors Market or a Factoring Market. Factors are, are the individuals who buy receivables for, almost always for a discount. And factoring is the practice of doing that. And there is a, there is a, a market, nationwide market and local market, both concerning factors. We've, we've seen those, oh gosh, they used to advertise a lot in the, in the daily papers in North Dakota. You don't really see the advertising anymore. But it was a particularly active market because the State of Montana uses the Factors Market for establishing values of contracts for deed and other contracts with rights to receive money payments.

MS. MULLEN: Through their Medicaid Program?

MR. NORDWALL: Through their Medicaid Program.

[¶ 12] On cross-examination, Nordwall testified "there's no question that a factor would make an offer" for the monthly payments from the annuity. Scott Cordell, an employee of the company that issued the annuity to Julia Gross, also testified that he was aware of a secondary market for the sale of payments for annuities. We conclude there was evidence from which a reasoning mind could reasonably conclude there was a market for the monthly payments from this annuity.

[¶ 13] The Estate also argues the record does not support the Department's finding that Dale Krause's testimony that he received no offers for the annuity was of little value because he had no authority to sell the annuity. The Estate claims Krause clearly had authority to sell the annuity. The Department's decision, however, does not rest solely on Krause's au-

thority to sell the annuity itself. Rather, the Department's decision states, "More importantly, [Krause] offered only the annuity contract itself for sale, and not the contractual rights to receive money payments, or stream of income from the annuity."

[¶ 14] The Department's decision distinguishes between the annuity itself and the income stream from the annuity, and the crux of this case is whether Julia Gross must have made a good faith effort to sell the monthly payments from the annuity as opposed to the annuity itself. The Estate argues the Department erred in concluding the monthly payments from the annuity were "contractual rights to receive money payments." The Estate argues the annuity and the monthly payments from the annuity are part of the same thing, a contractual right to receive money payments. The Estate argues the annuity is the contract "with various aspects comprising the whole, consisting of the annuity's irrevocability, nonassignability, non-transferability, and the stream of income." The Estate argues the Department erred in treating the income stream and the annuity itself as distinct and separate from each other, and because the annuity was not assignable, the income stream from the annuity could not be sold.

[¶ 15] An annuity is "a payment of a fixed sum of money at regular intervals of time," *see Webster's New World Dictionary* 56 (2nd Coll. Ed.1980), which parallels the administrative regulation that a contractual right to receive money payments is an available asset. *See* N.D. Admin. Code § 75–02–02.1–32(5). Although the annuity itself was not assignable, Julia Gross was designated as the owner and the payee of the annuity, and the annuity authorized her to "change the Payee at any time." Although the Estate argues the change of payee issue was not raised

below, that issue was contemplated by Nordwall's testimony that there was a market for the monthly payments from the annuity. According to Nordwall, there was a market for the monthly payments or income stream from the annuity, and the Estate has cited no other provisions in the annuity that would preclude a separate sale of those payments.

[¶ 16] We conclude the monthly payments from Julia Gross's annuity are a holder's interest in a contractual right to receive money payments within the meaning of N.D. Admin. Code §§ 75–02–02.1–30 and 75–02–02.1–32(5). A medicaid applicant must prove eligibility, *see Opp*, 2002 ND 45, ¶ 10, 640 N.W.2d 704, and must overcome a presumption that the holder's interest in a contractual right to receive money payments is saleable without working an undue hardship, which, in turn, requires the owner to make a good faith effort to sell the property. N.D. Admin. Code §§ 75–02–02.1–01(13), 75–02–02.1–01(24), and 75–02–02.1–30. Here, there is evidence from which a reasoning mind could have reasonably concluded there was a market for the monthly payments or income stream from the annuity, and Julia Gross did not make a good faith effort to sell those monthly payments from the annuity. We therefore conclude the Department's finding that Julia Gross did not make a good faith effort to sell the monthly payments from the annuity is supported by a preponderance of the evidence, and the annuity was a countable asset for purposes of George Gross's medicaid eligibility.

## IV

[¶ 17] The Estate argues the Department's unreasonable denial of George Gross's medicaid application mandates an award of attorney's fees and costs. *See* N.D.C.C. § 28–32–50. The Estate argues

the Department acted without substantial justification by denying the medicaid application on a belief that the income stream at issue could be sold in the secondary market. The Estate argues the Department erroneously required a good faith attempt to sell the income stream separately from the contractual right to receive money payments. Because of our resolution of the merits of the Estate's appeal, however, we conclude the Estate is not entitled to attorney's fees.

## V

[¶ 18] We affirm the judgment affirming the Department's decision.

[¶ 19] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, MARY MUEHLEN MARING and WILLIAM A. NEUMANN, JJ., concur.