2015 ND 63

**Shirley BLEICK, Appellant**

v.

**NORTH DAKOTA DEPARTMENT OF HUMAN SERVICES, Appellee.**

No. 20140103.

Supreme Court of North Dakota.

March 24, 2015.

Charles (Casey) L. Chapman, Bismarck, N.D., for appellant.

Jeanne M. Steiner, Office of Attorney General, Bismarck, N.D., for appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Shirley Bleick appealed from a district court order affirming a Department of Human Services' decision denying her application for Medicaid benefits. We affirm, concluding a preponderance of the evidence supports the Department's finding that the income stream from Shirley Bleick's life estate exceeds asset limits for Medicaid eligibility.

I

[¶ 2] In 1985, Shirley Bleick and her husband conveyed by warranty deed one quarter section of farmland to their son, Brian Bleick, and his wife. After Shirley Bleick's husband died in 1988, she conveyed the rest of the farmland, including a residence located on the land, to her son by warranty deed, but she reserved a life estate in that land. Shirley Bleick then left the farm and moved to Elgin.

[¶ 3]  Brian Bleick lives in a house located on the land subject to a life estate. He farmed full-time until 1991, when he reduced his farming operation. He continues to farm a smaller portion of the property, including land that is part of Shirley Bleick's life estate.

[¶ 4]  In 1992, Brian Bleick and his wife entered into a farm lease with Kerry Ulmer. Ulmer rents 410 acres of farmland from Brian Bleick, including some land subject to Shirley Bleick's life estate. The lease requires Ulmer pay Brian Bleick and his wife $8,200 in rent per crop year.

[¶ 5]  In 1997, Shirley Bleick executed a durable power of attorney, naming Brian Bleick as her attorney-in-fact. Shirley Bleick suffers from dementia and Alzheimer's disease and Brian Bleick took over her finances in "the early 2000s."

[¶ 6]  In February 2007, Brian Bleick, as attorney-in-fact, applied for Medicaid benefits for Shirley Bleick. The application was granted and she began receiving benefits. In June 2011, the Department sent Shirley Bleick and her son a letter advising them that her Medicaid benefits would be discontinued effective June 30, 2011, because she failed to provide information to the county social service office to determine continued eligibility. The Department also advised Shirley Bleick that she needed to provide a copy of the 1992 farm lease and a current or updated rental agreement including a description of the land rented, the dates the payments are due, and the amount of gross rent for each parcel.

[¶ 7]  Shirley Bleick's Medicaid benefits were discontinued, and Brian Bleick filed a new application on her behalf in July 2011. On August 18, 2011, the Department sent Shirley Bleick and her son notice that it was denying her application for benefits because her countable assets exceed the maximum limit. The letter explained:

Shirley Bleick was entitled to annual income from her son/POA from the life estate property. Imputed rents of $1533 for the pasture rent, plus the $8200 annual lease for rented lands, total unreported and uncounted income of $9,733 per year. Because that income was not provided to her, it is still considered as available to her, and is a countable asset. For the five years before the application was submitted in 03/2007, and for the years 2007 (application month 03/2007), 2008, 2009, 2010 and 2011, the total available asset is $97,330 ($9,733 times 10 years). These assets will need to be paid back to Mrs. Bleick, and she will need to spend them down before any further Medicaid coverage can be considered for her.

[¶ 8]  Shirley Bleick appealed the Department's decision denying her application. After a hearing, an administrative law judge ("ALJ") affirmed the denial of benefits. The Department issued an amended final order, rejecting some of the ALJ's findings and conclusions but affirming the denial of benefits. The Department found the farmland was rented starting in 1992, Brian Bleick kept the rental proceeds, Shirley Bleick was entitled to the rental income, and the transfer or assignment of the income to Brian Bleick is "best viewed as an annual gift." The Department concluded Shirley Bleick was entitled to the rental income for her portion of the rented land, the annual rent was either $6,013.20 or $5,332 and in either case the rental income exceeded the asset limitation of $3,000 for Medicaid eligibility. The Department also concluded Shirley Bleick was entitled to rent from her son and his wife for the two quarters that they live on that are subject to her life estate. The Department concluded the income stream from the life estate was an available asset, and Shirley Bleick presented no

evidence to establish a legal action against her son would be unsuccessful.

[¶ 9]  Shirley Bleick appealed the Department's decision to the district court. The district court affirmed the Department's decision denying Shirley Bleick's application for benefits.

II

[¶ 10]  When an administrative agency's decision is appealed from the district court, we review the agency's decision and the record before the agency in the same manner as the district court reviewed the decision. *Makedonsky v. North Dakota Dep't of Human Servs.*, 2008 ND 49, ¶ 5, 746 N.W.2d 185; N.D.C.C. § 28–32–49.  We affirm the agency's decision unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommenda-

tions by a hearing officer or an administrative law judge.

N.D.C.C. § 28–32–46.

[¶ 11]  Our review is limited, we do not make independent findings of fact or substitute our judgment for that of the agency, and we will not reverse the agency's decision unless its findings are not supported by a preponderance of the evidence. *Makedonsky*, 2008 ND 49, ¶ 6, 746 N.W.2d 185.  "In considering whether an agency's findings of fact are supported by a preponderance of the evidence, we decide 'only whether a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record.' " *Id.* (quoting *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 220 (N.D. 1979)).  Questions of law are fully reviewable on appeal. *Makedonsky*, at ¶ 6.

III

[¶ 12]  Shirley Bleick argues the Department erred in denying her application and finding her assets exceed eligibility limits because she presented evidence at the administrative hearing proving that she would not be successful in a claim against Brian Bleick for reimbursement of the rental income.  Shirley Bleick claims there was evidence the rent was gifted to Brian Bleick in 1988, she would not be successful in a claim against Brian Bleick to recoup those funds, she presented evidence supporting her assertion that she would be unsuccessful, and the Department failed to consider that evidence.

[¶ 13]  In *Makedonsky*, 2008 ND 49, ¶ 9, 746 N.W.2d 185 (quoting *Estate of Pladson v. Traill County Soc. Servs.*, 2005 ND 213, ¶¶ 10–11, 707 N.W.2d 473), we outlined the legal framework for determining an applicant's eligibility for Medicaid benefits:

Generally, a person without sufficient assets to meet the cost of necessary medical care and services is eligible for Medicaid benefits. *Schmidt v. Ward County Soc. Servs. Bd.*, 2001 ND 169, ¶ 9, 634 N.W.2d 506. The Medicaid program is intended to be a payor of last resort, and available resources must be exhausted before Medicaid will pay for an individual's care. *Wahl v. Morton County Soc. Servs.*, 1998 ND 48, ¶ 18, 574 N.W.2d 859. An applicant for Medicaid benefits must prove eligibility. *Roberts [v. North Dakota Dep't of Human Servs.]*, 2005 ND 50, ¶ 7, 692 N.W.2d 922. Under the Department's rules for determining Medicaid eligibility, a one-person unit is eligible for Medicaid benefits if the total value of that person's assets does not exceed $3,000. N.D. Admin. Code § 75–02–02.1–26(1)(a); *Linser v. Office of Attorney General*, 2003 ND 195, ¶ 7, 672 N.W.2d 643. An "asset" is defined as "any kind of property or property interest, whether real, personal, or mixed, whether liquid or illiquid, and whether or not presently vested with possessory rights." N.D. Admin. Code § 75–02–02.1–01(2). Although certain assets are . . . excluded from consideration, *see* [N.D. Admin. Code § 75–02–02.1–28], other assets that are "actually available" must be considered in determining the applicant's eligibility for Medicaid. N.D. Admin. Code § 75–02–02.1–25(1); *Estate of Gross v. North Dakota Dep't of Human Servs.*, 2004 ND 190, ¶ 8, 687 N.W.2d 460. Assets are "actually available" under N.D. Admin. Code § 75–02–02.1–25(1) when the assets are at the disposal of the applicant, recipient, or responsible relative who has a legal interest in a liquidated sum and that person has the legal ability to make the sum available for support, maintenance, or medical care. *Estate of Gross*, at ¶ 8.

Determining whether an asset is "actually available" for purposes of Medicaid eligibility is largely a fact-specific inquiry depending on the circumstances of each case. *Linser*, 2003 ND 195, ¶ 11, 672 N.W.2d 643. The "actually available" requirement must be interpreted reasonably, and the focus is on the applicant's actual and practical ability to make an asset available as a matter of fact, not legal fiction. *Opp v. Ward County Soc. Servs. Bd.*, 2002 ND 45, ¶ 11, 640 N.W.2d 704.

[¶ 14] The applicant does not need to have the asset in hand for the asset to be "actually available"; rather, the applicant may be required to initiate appropriate legal action to make the asset available. *Makedonsky*, 2008 ND 49, ¶ 10, 746 N.W.2d 185. "If an applicant has a colorable legal action to obtain assets through reasonable legal means, the assets are available and the burden is on the applicant to show a legal action would be unsuccessful." *Id.*

[¶ 15] Under the disqualifying transfer provisions, an individual is ineligible for Medicaid benefits if the individual disposes of assets or income for less than fair market value on or after the "look-back" date. N.D. Admin. Code §§ 75–02–02.1–33.1 (disqualifying transfers made before February 8, 2006), 75–02–02.1–33.2 (disqualifying transfers made on or after February 8, 2006). An individual disposes of assets or income when "the individual, or anyone on behalf of the individual or at the request of the individual, acts or fails to act in a manner that effects a transfer, conveyance, assignment . . . of any asset or income in which the individual had or was entitled to claim an interest of any kind." N.D. Admin. Code § 75–02–02.1–33.2(17). A transfer is complete when the individual has no lawful means of undoing the transfer or requiring a restoration of ownership.

N.D. Admin. Code § 75–02–02.1–33.2(14). There is a presumption that a transfer made for less than fair market value was made for the purposes of qualifying for Medicaid when the transfer was made on behalf of the individual by an attorney-in-fact to the individual's relative or to the attorney-in-fact. N.D. Admin. Code § 75–02–02.1–33.2(10)(e).

[¶ 16] In its final order, the Department affirmed a prior determination that Shirley Bleick's assets exceed the maximum allowed under the rules for determining Medicaid eligibility. The Department found Ulmer rents farmland, including land that is part of Shirley Bleick's life estate, Shirley Bleick was entitled to rental income for her portion of the land rented to Ulmer, $5,332 in rental income was due to Shirley Bleick under Brian Bleick's calculations, and $6,013.20 in rental income was due to Shirley Bleick under the Department's initial calculations. The Department found "the transfer or assignment of [the rental income] is best viewed as an annual gift from Shirley to Brian." The Department also found Brian Bleick and his wife live on land that is part of Shirley Bleick's life estate, and they have never paid rent for the use of the land. The Department found Brian Bleick "expressed entitlement" to the rental income and viewed and treated all of the life estate land as his own in fee simple. The Department found "Shirley gifted the income stream due to her from rents from Ulmer to Brian. Shirley can also be viewed to have knowingly gifted the imputed rents due her from Brian and Vicki."

[¶ 17] The Department explained, "One temptation is to impose a fiction, imputing an income stream and determining recipient liability reworking the entire case. Another is to view Shirley's gifts as disqualifying transfers of income and impose

a consequence of ineligibility based on look back period." The Department concluded:

Shirley was entitled to the rental income for her portion of the land rented to Ulmer. [The] Department calculated the annual rent at $6,013.20. Brian calculated the rent at $5,332. In either case, the rental [income] exceeded the dollar asset limitation of $3,000 for Medicaid eligibility. In addition, Shirley was entitled to rent from Brian for the two quarters that he lived on that were subject to her life estate. All of this income is an available asset.... If an applicant has a colorable legal action to obtain assets through reasonable legal means, the assets are available and the burden is on the applicant to show a legal action would be unsuccessful. Shirley presented no evidence to establish that a legal action against Brian would be unsuccessful. The income stream from Shirley's life estate is an available asset which exceeds the maximum limit for Medicaid eligibility.

(citations and quotations omitted).

[¶ 18] Shirley Bleick argues her actions were consistent with gifting the rental income to Brian Bleick. She contends she disclaimed any income from the property in 1988, and therefore the income was gifted in 1988 and is no longer an available asset and was transferred prior to the look-back period for disqualifying transfers.

[¶ 19] A gift is a voluntary transfer of property made without consideration. *Doeden v. Stubstad,* 2008 ND 165, ¶ 12, 755 N.W.2d 859. "A valid gift requires an intention by the donor to then and there give the property to the donee, coupled with an actual or constructive delivery of the property to the donee and acceptance of the property by the donee." *Makedonsky,* 2008 ND 49, ¶ 11, 746 N.W.2d 185. "The donor must intend to

relinquish the right of dominion on the one hand, and to create it on the other, and this intention to make a gift must be a present intention; a mere intention to give in the future will not suffice." *Zeman v. Mikolasek*, 75 N.D. 41, 53–54, 25 N.W.2d 272, 279 (1946). The donor's intent is a question of fact. *Doeden*, at ¶ 12. A valid gift cannot be revoked. *Id.*

[¶ 20] The Department found the transfer or assignment of the rental income was "best viewed as an annual gift." A preponderance of the evidence supports this finding. There was evidence Shirley Bleick moved off the life estate property in 1988, Brian Bleick farmed the land full time until 1991, and Ulmer began renting some of the farmland in 1992. Brian Bleick testified that Shirley Bleick said she never wanted any money off the land in 1988 and she never talked to him about rent for the land after 1988. He testified that she never mentioned the rent. There was evidence Ulmer pays rent for the land directly to Brian Bleick. There was no evidence Shirley Bleick and her son discussed the rent after Ulmer began renting the property. The Department found Brian Bleick "expressed entitlement to free and unfettered use of the land subject to Shirley's life estate" and he viewed and treated the land as his own in fee simple. The lease for the rented farmland is between Ulmer and Brian Bleick. Brian Bleick testified he thought the income from the life estate was his, he paid the taxes on the land, and he used the income for farm expenses. Any intent Shirley Bleick had in 1988 to gift potential income from the life estate in the future was not sufficient for a valid gift. *See Zeman*, 75 N.D. at 53–54, 25 N.W.2d at 279. A mere intention to give in the future does not give rise to an obligation which the law will recognize and enforce. *See* 38A C.J.S. *Gifts* § 16 (2008); *see also Makedonsky*, 2008 ND 49, ¶ 11, 746 N.W.2d 185.

[¶ 21] Furthermore, the Department found Shirley Bleick met with an attorney in 1999 to discuss the life estate and she knew the land was being rented and Brian Bleick was receiving the rental income. The Department found the attorney explained to Shirley Bleick what options she had, including releasing the life estate, Shirley Bleick understood her options, but she did not release her life estate interest. The preponderance of the evidence supports the Department's findings. The attorney testified that he met with Shirley Bleick in 1999, she inquired about the life estate and wanted to know what could be done with it, she indicated the rental income had been paid to Brian Bleick, they discussed her options of releasing the life estate or continuing the ownership the way it was, and she indicated she wanted to think about her options. He also testified that he called her a few days later to remind her that releasing the life estate was an option and he could prepare a deed if she wanted to release the life estate, but she did not contact him again. The Department found Shirley Bleick understood the difference between the transfer of land in fee simple and the transfer of land with a life estate reserved. The Department's findings and this evidence supports that Shirley Bleick did not intend to permanently gift all income from the life estate to her son. She understood the difference between a life estate and a fee simple interest. If she intended to permanently gift all income from the property to Brian Bleick she could have released the life estate and transferred title to him in fee simple in 1999. A reasoning mind reasonably could have determined the rental income, if it is viewed as a gift, is an annual gift.

[¶ 22] The Department ultimately concluded the income stream from the life estate is an available asset and it exceeds

the maximum limit for Medicaid eligibility. The preponderance of the evidence supports the Department's finding that the rental income and imputed rent from Brian Bleick is an available asset, which exceeds the eligibility limits. Brian Bleick testified that Ulmer pays $8,200 per year for rent on 410 acres of land and 266 acres of the land Ulmer rents is land included in Shirley Bleick's life estate. Under Brian Bleick's calculations, Shirley Bleick is entitled to $5,332 in rent from the land rented to Ulmer. This amount alone exceeds the maximum asset limit for Medicaid eligibility.

[¶ 23] Brian Bleick has a power of attorney for Shirley Bleick, which entails a confidential relationship, imposes fiduciary responsibilities on Brian Bleick, and gives him the authority to gift Shirley Bleick's property under N.D.C.C. § 30.1-30–06. *See Estate of Vizenor ex rel. Vizenor v. Brown*, 2014 ND 143, ¶ 26, 851 N.W.2d 119; N.D. Admin. Code § 75–02–02.1–33.2(15)(h). When a confidential relationship exists, " 'the person in whom the confidence is reposed is deemed to be a trustee.' " *Vizenor*, at ¶ 26 (quoting *Roberts v. North Dakota Dep't of Human Servs.*, 2005 ND 50, ¶ 12, 692 N.W.2d 922). "All transactions between a trustee and a beneficiary, including gifts, are presumed to be without sufficient consideration and under undue influence." *Vizenor*, at ¶ 26. Under the Department's Medicaid eligibility regulations "[a] [disqualifying] transfer is complete when the individual . . . has no lawful means of undoing the transfer or requiring a restoration of ownership." N.D. Admin. Code § 75–02–02.1–33.2(14); *see also* N.D. Admin. Code § 75–02–02.1–33.1(8).

[¶ 24] Brian Bleick, as Shirley Bleick's attorney-in-fact, has the authority to gift Shirley Bleick's property to himself; however, any gift to himself is presumed to be without sufficient consideration and under undue influence. Under those principles, Shirley Bleick has the ability to institute legal action to make the income available for support, maintenance, or medical care. "Welfare regulations reflect a basic social policy that welfare recipients must use their own available income and resources before shifting the burden for their support to the public." *Opp*, 2002 ND 45, ¶ 9, 640 N.W.2d 704. "It is appropriate for an agency to find that assets which the applicant has a legal entitlement to are actually available to [her] where the record fails to demonstrate the applicant would be unsuccessful in exercising a legal right to obtain them." *Linser*, 2003 ND 195, ¶ 11, 672 N.W.2d 643. Shirley Bleick did not present any evidence to establish that she would be unsuccessful in a legal action against Brian Bleick for the current rental income.

[¶ 25] Shirley Bleick argues that she would be unsuccessful in a claim against Brian Bleick for reimbursement of past rental income. She contends her claims would be precluded by the statute of limitations and estoppel. However, we need not address these issues because the Department found the current income stream from the life estate is an available asset which exceeds the maximum limit for eligibility and did not base its decision on the rental income from prior years.

[¶ 26] The Department did not make specific findings about the amount of the past income Shirley Bleick was entitled to or specifically address whether the rental income from prior years was a valid gift and disqualifying transfer or whether it is an available asset requiring Shirley Bleick to establish that she would be unsuccessful in a legal action against Brian Bleick for the past rental income. A preponderance of the evidence does support the Department's finding that the income stream

from the life estate is an available asset, which exceeds eligibility limits. We affirm the Department's final decision denying Shirley Bleick's application for Medicaid benefits.

IV

[¶ 27]   We have considered the remaining issues or arguments raised by the parties, and we conclude they are unnecessary to our decision. We affirm the order affirming the Department's decision.

[¶ 28]   DALE V. SANDSTROM, CAROL RONNING KAPSNER, and LISA FAIR McEVERS, JJ., concur.

CROTHERS, Justice, dissenting.

[¶ 29]   I respectfully dissent.

[¶ 30]   The majority correctly describes our standard of review of an administrative decision. Majority opinion at ¶ 10. The agency's findings include that rental payments were an available asset disqualifying Shirley Bleick from receiving benefits because "transfer or assignment of the rental income was 'best viewed as an annual gift.' " *Id.* at ¶ 20. This finding decides the case, but I believe reversal is required because the finding enjoys no support in the record.

[¶ 31]   The majority concludes the agency reasonably could have found the gift was made annually. Majority opinion at ¶ 20. However, much of the cited evidence supports the contrary conclusion:

"There was evidence Shirley Bleick moved off the life estate property in 1988, Brian Bleick farmed the land full time until 1991, and Ulmer began renting some of the farmland in 1992. Brian Bleick testified that Shirley Bleick said she never wanted any money off the land in 1988 and she never talked to him about rent for the land after 1988. He testified that she never mentioned the

rent. There was evidence Ulmer pays rent for the land directly to Brian Bleick. There was no evidence Shirley Bleick and her son discussed the rent after Ulmer began renting the property. The Department found Brian Bleick 'expressed entitlement to free and unfettered use of the land subject to Shirley's life estate' and he viewed and treated the land as his own in fee simple. The lease for the rented farmland is between Ulmer and Brian Bleick. Brian Bleick testified he thought the income from the life estate was his, he paid the taxes on the land, and he used the income for farm expenses."

*Id.* Further facts and agency findings support my conclusion:

"The Department also found Brian Bleick and his wife live on land that is part of Shirley Bleick's life estate, and they have never paid rent for the use of the land. The Department found Brian Bleick 'expressed entitlement' to the rental income and viewed and treated all of the life estate land as his own in fee simple. The Department found 'Shirley gifted the income stream due to her from rents from Ulmer to Brian. Shirley can also be viewed to have knowingly gifted the imputed rents due her from Brian and Vicki.' "

*Id.* at ¶ 16.

[¶ 32]   The majority recites extensive facts the agency *could* have relied upon to find an annual gift. Majority opinion at ¶ 21. More telling is what the agency actually wrote:

"It was troubling that Brian expressed entitlement to Shirley's rental income because 'that was the way she wanted it' and 'that was the way it was always done.' Brian expressed entitlement to free and unfettered use of the land subject to Shirley's life estate. Brian viewed and treated all of the subject

land as his own in fee simple. The law does not allow an individual, such as Shirley, to self-impoverish in order to pass on assets to family members. Shirley gifted the income stream due to her from rents from Ulmer to Brian. Shirley can also be viewed to have knowingly gifted the imputed rents due her from Brian and Vicki. One temptation is to impose a fiction, imputing an income stream and determining recipient liability reworking the entire case. Another is to view Shirley's gifts as disqualifying transfers of income and impose a consequence of ineligibility based on look back period. N.D. Admin. Code § 75–02–02.1–33.1(1)(a) (providing three year look back period for transfers made prior to February 8, 2006); N.D. Admin. Code § 75–02–02.1–33.2(2) (providing five year look back period for transfers on or after February 8, 2006); N.D. Admin. Code § 75–02–02.1–33.1(12) (establishing implied trust where an individual who disposes of assets or income to someone in a confidential relationship)."

[¶ 33] Shirley Bleick made her Medicaid application in March of 2007 and the five year look-back extended to March of 2002. The law recognizes she could make a present gift of the land and its income as long as her intent was not to make a gift at some future time. *Heuer v. Heuer*, 64 N.D. 497, 503, 253 N.W. 856, 859 (1934); 38 Am. Jur. 2d *Gifts* § 15 (2010). Life estate interests in real property are excluded when calculating an applicant's available assets. N.D. Admin. Code § 75–02–02.1–28(21). Therefore the agency could only claim Shirley Bleick's assets included income from the life estate. However, the evidence relied upon by the agency shows that since 1988 Brian Bleick treated Shirley Bleick's life estate property and income as his own. No evidence relied on by the agency for its decision indicates Shirley Bleick intended in 1988 that the transfer to Brian Bleick as anything other than permanent, and the agency's supposition to the contrary does not constitute evidence. *See, e.g., Pfeiffer v. N.D. Workmen's Comp. Bureau*, 57 N.D. 326, 221 N.W. 894, 897 (1928) (holding a claimant must prove entitlement to benefits by the preponderance of the evidence, which is not sustained by mere surmise or conjecture); *Foss v. N.D. Workmen's Comp. Bureau*, 214 N.W.2d 519, 525 (N.D. 1974) (concluding claimant's position, unsupported by medical testimony whatsoever, was insufficient to meet her burden of proof).

[¶ 34] I would reverse the agency and order payment of Medicaid benefits because the agency's finding that Brian Bleick received an "annual gift" made during or after the look-back period is not supported by its findings.

[¶ 35] Daniel J. Crothers