2015 ND 96

**The EVANGELICAL GOOD SAMARITAN SOCIETY d/b/a Good Samaritan Society–Mott, Appellee**

v.

**NORTH DAKOTA DEPARTMENT OF HUMAN SERVICES, Appellant.**

**No. 20140297.**

Supreme Court of North Dakota.

April 28, 2015.

Charles (Casey) L. Chapman (argued), Bismarck, N.D., and Christina Lollar (on brief), Harrisburg, PA, for appellee.

John H. Tyler (argued), Office of Attorney General, Bismarck, N.D., and Jeanne M. Steiner (on brief), Special Assistant Attorney General, Office of Administrative Hearings, Bismarck, N.D., for appellant.

KAPSNER, Justice.

[¶1] The Department of Human Services appeals from a judgment reversing the Department's dismissal of Emma Rieger's appeal challenging its denial of her Medicaid application and remanding for a fair hearing on the application. Because the law allows The Evangelical Good Samaritan Society, doing business as the Good Samaritan Society–Mott ("Society"), to act as Rieger's authorized representative for purposes of appealing the Department's denial of her Medicaid application, we affirm the judgment.

I

[¶2] On March 21, 2013, Rieger entered the Society's basic care facility in Mott. On May 28, 2013, Rieger executed a

general durable power of attorney appointing two women "to be my attorneys-in-fact and co-agents in my name and for my benefit."

[¶ 3] State Medicaid regulations provided that "[a]ll individuals wishing to make application for medicaid must have the opportunity to do so, without delay," N.D. Admin. Code § 75–02–02.1–02(1)(a), and defined an "application" as "a written request made by an individual desiring assistance under the medicaid program, or by an individual seeking such assistance on behalf of another individual. . . ." N.D. Admin. Code § 75–02–02.1–02(1)(b). Furthermore, a "prescribed application form must be signed by the applicant or by someone acting responsibly for an incapacitated applicant." N.D. Admin. Code § 75–02–02.1–02(1)(c). The definition section of the regulations governing the chapter on appeals and hearings provided:

> "Authorized representative" means an individual, including an attorney at law, who has been authorized by the claimant to act for and represent the claimant in any and all aspects of a hearing. The claimant need not designate an authorized representative.

N.D. Admin. Code § 75–01–03–01(4).

[¶ 4] On July 15, 2013, the United States Department of Health and Human Services gave notice that a new rule governing "authorized representatives" would become effective January 1, 2014. *See* 78 Fed. Reg. 42160, 42303 (July 15, 2013). The new regulation, 42 C.F.R. § 435.923, provides in part:

> (a)(1) The agency must permit applicants and beneficiaries to designate an individual *or organization* to act responsibly on their behalf in assisting with the individual's application and renewal of eligibility and other ongoing communications with the agency. Such a designation must be in accordance with paragraph (f) of this section, including the

applicant's signature, and must be permitted at the time of application and at other times.

> . . . .

> (f) For purposes of this section, the agency must accept electronic, including telephonically recorded, signatures and handwritten signatures transmitted by facsimile or other electronic transmission. Designations of authorized representatives must be accepted through all of the modalities described in § 435.907(a).

(Emphasis added). The purpose of the new regulation was explained as follows:

> Under current regulations at 42 CFR 435.907, retained in the Medicaid eligibility final rule, states must accept applications from authorized representatives acting on behalf of an applicant. In this rulemaking, we propose to add § 435.923 establishing minimum requirements for the designation of authorized representatives. Proposed § 435.923, which is applied to state CHIP agencies through the addition of a cross reference in proposed § 457.340, is intended to ensure a consistent set of rules and standards for authorized representatives across all insurance affordability programs. We believe the proposed regulation is consistent with current policies and practice in most states today and therefore will not substantially affect state programs.

> Specifically, we propose that, consistent with longstanding practice, applicants and beneficiaries may choose to designate an individual or organization to act on the applicant or beneficiary's behalf, or may have such a representative through operation of state law (for example, through a legal guardianship arrangement). The state may not restrict the ability of applicants and beneficiaries to have an authorized

representative to only certain groups of applicants and beneficiaries. 78 Fed. Reg. 4606 (Jan. 22, 2013).

[¶ 5] On November 18, 2013, Rieger signed a "Designation of Authorized Representative" authorizing the Society to "(i) initiate an application for Medicaid benefits on my behalf, (ii) participate in all reviews of my eligibility for Medicaid benefits and (iii) take such action as may be necessary to establish my eligibility for Medicaid." On the same date, Rieger signed a separate document titled, "Assignment of Medicaid Benefits," which assigned to the Society her right to obtain Medicaid benefits for services provided to her by the Society, and an "Authorization for Release of Health Information." These documents were provided to the Department.

[¶ 6] In late November 2013, an online application requesting Medicaid and basic care benefits was electronically signed by Rieger and submitted to the Department. On December 4, 2013, an eligibility worker for the Department denied the application because Rieger's countable assets of $135,264.58 exceeded the $3,000 Medicaid limit. The "Medicaid Denial" notice explained "assets taken from Emma in a confidential relationship by her power of attorney are a countable asset and are over the Medicaid limit allowed for a household of one." The notice informed Rieger of her right to request a fair hearing. On January 3, 2014, the Society timely appealed the denial notice and requested a fair hearing.

[¶ 7] The Administrative Law Judge ("ALJ") agreed with the Department's objections to the Society's standing and dismissed the appeal for lack of subject matter jurisdiction. The ALJ concluded N.D. Admin. Code § 75–01–03–01(4) precludes a nursing facility from being an "authorized representative" by limiting a representative to an "individual"; the new federal regulation was inapplicable because Rieger signed the documents before the regulation became effective; Medicaid benefits are not assignable; and it was "questionable" whether Rieger, who was 90 years old with a history of dementia, was competent to sign the documents. The Society appealed, and the district court reversed. The court concluded state regulations which conflicted with 42 C.F.R. § 435.923 were preempted, the Society's notice of appeal was timely, and the Society had standing to appeal on behalf of Rieger. The court remanded for a fair hearing on Rieger's application for Medicaid benefits.

II

[¶ 8] The Department wages a multifaceted attack on the district court's conclusion that the Society had standing to appeal on behalf of Rieger.

[¶ 9] Under N.D.C.C. §§ 28–32–46(1) and 28–32–49, this Court may reverse an administrative decision if it is not in accordance with the law. To have standing, a litigant must have an interest, either in an individual or representative capacity, in the cause of action or the subject matter of the controversy. *See, e.g., Whitecalfe v. North Dakota Dep't of Transp.*, 2007 ND 32, ¶ 15, 727 N.W.2d 779; *Nodak Mut. Ins. Co. v. Ward Cnty. Farm Bureau*, 2004 ND 60, ¶ 11, 676 N.W.2d 752. Whether a party has standing to litigate an issue is a question of law which we review de novo on appeal. *See, e.g., Finstad v. Gord*, 2014 ND 72, ¶ 23, 844 N.W.2d 913; *Whitecalfe*, at ¶ 15.

A

[¶ 10] The Department does not quarrel with the proposition that rules and regulations of federal agencies have the force and effect of law and, under the supremacy clause, preempt conflicting state law. *See, e.g., Northwestern Fed.*

*Sav. and Loan Ass'n v. Ternes,* 315 N.W.2d 296, 299 (N.D.1982). Rather, the Department argues 42 C.F.R. § 435.923 does not control in this case because Rieger signed the "Designation of Authorized Representative" and the other documents on November 18, 2013, about one and one-half months before the federal regulation became effective on January 1, 2014. The Department's position demonstrates a fundamental misunderstanding of the law.

[¶ 11] It is well-established that governments have "a present power to enact laws intended to carry out constitutional provisions for the future when the time comes for them to take effect." *Druggan v. Anderson,* 269 U.S. 36, 39, 46 S.Ct. 14, 70 L.Ed. 151 (1925). "It is the general rule in this country that a legislature has power to enact a statute not authorized by the existing constitution of that State when the statute is passed in anticipation of an amendment to its constitution authorizing it or which provides that it shall take effect upon the adoption of an amendment to its constitution specifically authorizing and validating such statute." *Henson v. Georgia Indus. Realty Co.,* 220 Ga. 857, 142 S.E.2d 219, 223–24 (1965); *see also Alabam's Freight Co. v. Hunt,* 29 Ariz. 419, 242 P. 658, 659 (1926); *Stop Slots MD 2008 v. State Bd. of Elections,* 424 Md. 163, 34 A.3d 1164, 1177 (2012). The obvious purpose of this rule "is 'to allow the government time to establish machinery' for enforcement of the act," *Blumenthal v. Clerk of Circuit Court,* 278 Md. 398, 365 A.2d 279, 286 (Ct.App.1976) (internal citation omitted), and to avoid the "folly" of requiring another session of the legislature after the amendment's effective date to enact the regulatory and enabling provisions. *In re Opinions of the Justices,* 227 Ala. 291, 149 So. 776, 780 (1933).

[¶ 12] The same principle applies to people who might be affected by a change in the law. "The purpose of the future effective date is to inform people of the provisions of a statute before it becomes effective so they may protect their rights and discharge their obligations." 2 N. Singer and J.D. Singer, *Statutes and Statutory Construction* § 33:7 (7th ed.2009) (footnote omitted). Specifically, public notice of future effective dates of federal regulations "gives persons affected by the change in the law time to prepare to comply with the new rule." *United States v. Cain,* 583 F.3d 408, 423 (6th Cir.2009); *see also United States v. Utesch,* 596 F.3d 302, 309 (6th Cir.2010). It "is intended to give affected parties time to adjust their behavior before the final rule takes effect." *Riverbend Farms, Inc. v. Madigan,* 958 F.2d 1479, 1485 (9th Cir.1992).

[¶ 13] The Department does not claim there is anything inherently illegal about the "Designation of Authorized Representative" signed by Rieger. *See, e.g., Finstad v. Ransom–Sargent Water Users, Inc.,* 2014 ND 146, ¶¶ 18–19, 849 N.W.2d 165. The Department has not cited, nor have we found, any authority to support the proposition that an agreement executed in anticipation of a change in the law and before the law's effective date is void. The new regulation was in effect when the Society attempted to make use of the document. We reject the Department's argument that Rieger needed to re-sign the document on or after January 1, 2014, to take advantage of the change in the law.

B

[¶ 14] The Department argues the Society cannot serve as Rieger's authorized representative because it failed to comply with 42 C.F.R. § 435.923(e), which provides:

(e) The agency must require that, as a condition of serving as an authorized representative, a provider or staff member or volunteer of an organization must

affirm that he or she will adhere to the regulations in part 431, subpart F of this chapter and at 45 CFR 155.260(f) (relating to confidentiality of information), § 447.10 of this chapter (relating to the prohibition against reassignment of provider claims as appropriate for a facility or an organization acting on the facility's behalf), as well as other relevant State and Federal laws concerning conflicts of interest and confidentiality of information.

According to the Department, not only did the Society fail to make the affirmations required by the regulation, but Rieger in the "Designation of Authorized Representative" specifically waived any claims of confidentiality and any potential conflicts of interest arising from the appointment.

[¶ 15]   Under 42 C.F.R. § 435.923(e), the "*agency* must require that, as a condition of serving as an authorized representative, a provider or staff member or volunteer of an organization must affirm that he or she will adhere to the regulations...." (Emphasis added).   The Department in this case did not require the Society or a staff member or volunteer to affirm adherence to the regulations. Rather, the Department simply refused to recognize the validity of any of the documents signed by Rieger on November 18, 2013.   The Department cannot rely on the failure to perform its duties under the regulation to invalidate the "Designation of Authorized Representative."

### C

■ [¶ 16]   The Department argues the "Designation of Authorized Representative" is invalid because Rieger was not competent to sign the document and because Rieger failed to revoke the durable power of attorney.   According to the Department, only Rieger's attorneys-in-fact were authorized to act on Rieger's behalf in attempting to obtain Medicaid benefits.

[¶ 17]   First, the ALJ determined it was "questionable" whether Rieger was competent to sign the documents, but nothing in this record establishes that Rieger was incompetent on November 18, 2013.   Second, the Department cites no authority for the proposition that a person may have only one authorized representative.   In at least one jurisdiction that allowed organizations to be authorized representatives before the enactment of 42 C.F.R. § 435.923, the court indicated that a long-term care facility with an authorization agreement with a patient may appeal on her behalf where the patient's daughter who was designated the power of attorney failed to act.   *See HCR ManorCare v. Department of Pub. Welfare,* 969 A.2d 4, 5–8 (Pa.Cmwlth.2009).   Third, this case presents the classic scenario justifying the appointment of more than one authorized representative.   The reason given by the Department's eligibility worker for denying Rieger's application for Medicaid benefits was "assets taken from Emma in a confidential relationship by her power of attorney are a countable asset and are over the Medicaid limit."   Although the Department argues Rieger needed to revoke the misused power of attorney before she could designate the Society as an authorized representative, the Department contends in its next breath that Rieger was not competent to sign any legal documents.   Therefore, according to the Department, only the persons it accused of absconding with Rieger's assets may appeal the denial of her application for Medicaid benefits.

[¶ 18]   When pieced together, the Department's arguments boil down to this: Rieger was required to do what she was incapable of doing, and because she did not do what she could not do, the people who the Department alleged violated their fiduciary duties owed Rieger under the durable power of attorney, *see Bleick v. North*

*Dakota Dep't of Human Services,* 2015 ND 63, ¶ 23, 861 N.W.2d 138, are the only persons who can appeal the denial of Medicaid benefits on Rieger's behalf. The Department's position is contrary to reason and common sense.

[¶ 19] We conclude Rieger's failure to revoke the durable power of attorney did not invalidate the "Designation of Authorized Representative."

## D

[¶ 20] The Department argues the "Assignment of Medicaid Benefits" document signed by Rieger is also invalid.

[¶ 21] The Department contends 42 U.S.C. § 1396a(a)(32) prohibits the assignment of Medicaid benefits. The Department argues that, under general principles of assignment law, the assignment is invalid because Rieger had no present right to receive Medicaid benefits when she signed the document. The Department asserts the pursuit of Medicaid eligibility to obtain future benefits is an unassignable personal right. The Department also argues the Society cannot operate "as both assignee of Rieger's right to pursue Medicaid eligibility to obtain future benefits and as Rieger's authorized representative to obtain benefits at the same time." The Society disputes these assertions.

[¶ 22] It is unnecessary to determine whether the "Assignment of Medicaid Benefits" is valid. The issue is whether the Society had standing to appeal the Department's denial of Medicaid benefits on Rieger's behalf. The Department admits that courts in other jurisdictions have construed authorization statements containing assignment language as constituting only the appointment of health care facilities as authorized representatives, giving the facilities standing to appeal the denial of benefits on behalf of their residents. *See Green Valley SNF, LLC v. Delaware Dep't of Health and Soc. Servs.,* 2012 WL 3834900, at *3 (Del.Sup.Ct., Aug. 29, 2012); *Bonetti Health Care Ctr., Inc. v. Department of Public Welfare,* 2012 WL 8682351, at *4 (Pa.Cmwlth., March 7, 2012). Here, the "Assignment of Medicaid Benefits" and the "Designation of Authorized Representative" are separate documents. Regardless of the validity of the "Assignment of Medicaid Benefits," the "Designation of Authorized Representative" clearly authorized the Society to appeal the Department's denial of benefits on Rieger's behalf.

## III

[¶ 23] It is unnecessary to address other arguments raised because they are without merit or are unnecessary to the decision. We conclude the Society has standing to appeal the Department's denial of Rieger's application for Medicaid benefits, and the Department's decision to the contrary is not in accordance with the law. We affirm the district court judgment reversing the Department's dismissal of Rieger's appeal challenging the denial of her Medicaid application and remanding for a fair hearing on the application.

[¶ 24] GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS, DANIEL J. CROTHERS and DALE V. SANDSTROM, JJ., concur.